Opinion issued March 17, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00913-CV

———————————

Kathryn Perez, Individually, and O/B/O All Wrongful Death
Beneficiaries of Patrick Rios, Deceased, Appellant

V.

DNT Global
Star, L.L.C. and Stellar Development & Management Co., Appellee



 



 

On Appeal from the 127th District Court 

Harris County, Texas



Trial Court Case No. 0767286

 



 

O P I N I O N

          After her teen-aged son was shot and
killed while visiting her apartment, appellant Kathryn Perez filed suit against
DNT Global Star, L.L.C., the property owner, and Stellar Development and
Management Co., the property manager (hereinafter, “Stellar” collectively). In
this appeal, we consider whether (1) the jury’s negative finding on Perez’s
claims for premises liability, deceptive trade practices (“DTPA”), and fraud
are against the great weight and preponderance of the evidence; (2) the trial
court erred in excluding evidence of nonviolent crimes occurring on the
premises; and (3) the trial court erred by refusing to submit an instruction on
forseeability to the jury and by submitting a sole proximate cause instruction
to the jury.  We affirm.

I. BACKGROUND

          In September 2005, Perez moved to Houston after her
divorce.  Believing that she would soon
need to return her car to her ex-husband, Perez looked for an apartment near
her work.  Crosstimbers Park Apartments
was located across the street from her job, so she spoke to Nora Nunez, the
apartment manager, about whether there might be an opening.  Perez testified at trial that she asked Nunez
whether the apartments were safe, and Nunez responded, “yes.”  Perez soon signed a lease for a one-bedroom
apartment.

          At the time Perez moved in, the access
gates to the apartment complex were working. 
A few weeks later, the gate was broken and Perez notified Nunez.  Nunez testified that she had the gate fixed
repeatedly, but finally stopped repairing it because of the cost.  Soon after moving in, Perez moved to a
two-bedroom unit near the front of the complex because a couple of windows had
been broken in her one-bedroom unit.  She
was not sure, but they may have been broken by rocks.

          On December 9, 2005, Perez’s son,
Patrick Rios, came to visit her at the apartment.  After dinner, Perez told her son to take out
the trash while she took a shower.  Patrick
asked for the car keys so that he could get a CD out of the truck.  Shortly thereafter, Perez heard a gunshot,
followed by a banging on her front door. 
When she opened the front door, Oscar, a 10-year-old neighbor was
there.  Oscar was screaming, “They shot
Patrick.”  Perez looked out in the
parking lot and saw Patrick lying on the ground. His necklace, watch, cell phone,
and shoes had been taken. When EMS arrived, Patrick was transported to Ben Taub
Hospital, where he died from a gunshot wound to the heart.  Although Oscar was able to describe the
gunman and a composite sketch was created by police, the perpetrator was never
caught.

II. JURY CHARGE

      In issue number five, Perez contends that the jury charge
contained reversible error. 
Specifically, Perez contends that the trial court erred by (1) refusing
to instruct the jury that duty had been established as a matter of law, and (2)
submitting a sole proximate cause instruction to the jury.  We review these
issues before considering Perez’s evidentiary challenges so that we can measure
the evidentiary sufficiency against the correct standard—either the jury charge as
actually submitted, which Perez claims was defective, or against the charge that
the trial court should have submitted. See Osterberg v. Peca, 12
S.W.3d 31, 55 (Tex. 2000).

A. Standard of Review

In a jury trial, the trial court shall submit
“such instructions and definitions as shall be proper to enable the jury to
render a verdict.” Tex. R. Civ. P. 277.
A valid instruction (1) assists the jury, (2) accurately states the law, and
(3) finds support in the pleadings and evidence. Union Pac. R.R. v.
Williams, 85 S.W.3d 162, 166 (Tex. 2002). The trial court has
considerable discretion in deciding whether a proposed instruction is necessary
and proper to submit to the jury. State Farm Lloyds v. Nicolau, 951
S.W.2d 444, 451-52 (Tex. 1997); City of The Colony v. N. Tex. Mun.
Water Dist., 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet.
dism’d) (“Indeed, a trial court is afforded even more discretion when
submitting instructions than when submitting questions.” (citing Wal-Mart
Stores, Inc. v. Middleton, 982 S.W.2d 468, 470 (Tex. App.—San Antonio
1998, pet. denied))). We will not disturb the trial court’s decision on which
instructions to submit to the jury absent an abuse of discretion. McCarthy
v. Wani Venture, A.S., 251 S.W.3d 573, 584 (Tex. App.—Houston [1st
Dist.] 2007, pet. denied). If the trial court submits an incorrect jury
instruction, we reverse only if the record shows that the given instruction was
reasonably calculated to, and probably did, cause the rendition of an improper
judgment.  Bed, Bath & Beyond, Inc. v. Urista, 211 S.W.3d
753, 757 (Tex. 2006) (citing Reinhart v. Young, 906
S.W.2d 471, 473 (Tex. 1995), and Tex.
R. App. P. 61.1(a)).

B. 
Charge Given

          The following charge was submitted to
the jury:

JURY
QUESTION NO. 1

Did the negligence,
if any, of those named below proximately cause the occurrence in question?

 

          With respect to the condition of the
premises, [Stellar] was negligent if---

                   

1. the condition posed an unreasonable
risk of harm, and 

 

                   2. [Stellar] knew or
reasonably should have known of the danger, and

 

3.  [Stellar] failed
to exercise ordinary care to protect Patrick Rios from the danger, by both
failing to adequately warn Kathryn Perez or Patrick Rios of the condition and
failing to make that condition reasonably safe.

 

“Ordinary care,” when used with respect to the conduct of
[Stellar] as an owner or occupier of a premises, means that degree of care that
would be used by an owner or occupier of ordinary prudence under the same or
similar circumstances.

 

“Proximate cause” means that cause which, in a natural and
continuous sequence, produces an event, and without which cause such event
would not have occurred.  In order to be
a proximate cause, the act or omission complained of must be such that a person
using ordinary care would have foreseen that event, or some similar event,
might reasonably result therefrom.  There
may be more than one proximate cause of an event, but if an act or omission of
any person not a party to the suit was the “sole proximate cause” of an
occurrence, then no act or omission of any party could have been a proximate
cause.

 

The charge given followed the Texas Pattern Jury Charge
question recommended for a premises liability case when the plaintiff is an
invitee.  See Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Malpractice, Premises, Products, PJC 66.4 (2008).

C. 
Failure to Instruct Regarding Foreseeability

          Perez first argues that the trial
court erred by refusing to instruct the jury that foreseeability had been
determined as a matter of law.[1]  This Court has held that the trial court
need not give separate foreseeability instructions for proximate cause and
duty.  See S.H v. Nat’l Convenience
Stores, Inc., 936 S.W.2d 406, 408 (Tex. App.—Houston [1st Dist.] 1996, no
writ); see also Del Lago Partners, Inc.
v. Smith, 206 S.W.3d 146, 164 (Tex. App.—Waco 2006), aff’d, 307 S.W.3d 762 (Tex. 2010). 
The broad form submission in this case properly instructed the jury that
the premises owner had a duty to exercise ordinary care.  Thus, the trial court did not err in refusing
to submit the requested instruction. 

D. 
Sole Proximate Cause Instruction

          Perez also contends that the trial
court erred by including the “sole proximate cause” instruction in the
definition of proximate cause.  Perez
argues that “sole proximate cause” is an inferential rebuttal that constituted
an improper comment on the weight of the evidence.

According to Pattern Jury
Charge 3.2, General Negligence, “sole proximate cause” is defined as follows: “There may be more than one proximate
cause of an event, but if an act or omission of any person not a party to the
suit was the ‘sole proximate cause’ of an occurrence, then no act or omission of any party could
have been a proximate cause. Comm.
on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: General Negligence, PJC 3.2 (2010). “Sole proximate cause” is an inferential rebuttal and should be submitted
to the jury if there is evidence that a person’s conduct that is not submitted to the jury is the sole proximate cause of the occurrence. See Am. Jet, Inc. v. Leyendecker, 683 S.W.2d 121, 126 (Tex. App.—San Antonio 1984, no writ); Herrera v. Balmorhea Feeders, Inc., 539 S.W.2d 84, 86 (Tex. Civ. App.—El Paso 1976, writ ref’d n.r.e.). 

It
is undisputed that in this case, there was some evidence that a person whose
conduct was not submitted to the jury—the murderer—could have been the sole proximate cause of the
injury.  Thus, it was appropriate to
submit the instruction to the jury.  See Perez
v. Weingarten Realty Investors, 881 S.W.2d 490, 496 (Tex. App.—San Antonio 1994, writ denied) (holding “sole
proximate cause” instruction proper when evidence in premises liability cause
showed act of rapist could be sole proximate cause of tenant’s injury).

Perez
also argues that the “sole proximate cause” instruction was improper because
Stellar did not plead it.  However, sole
proximate cause is not an affirmative defense; it is an inferential rebuttal
defense.  An inferential rebuttal defense
operates to rebut an essential element of the plaintiff’s case by the proof of
other facts. Dew v. Crown Derrick Erectors, Inc., 208 S.W.3d 448, 450 (Tex. 2006); Walzier v. Newton, 27 S.W.3d 561, 563–64 (Tex. App.—Amarillo 2000, no pet.). 
Inferential rebuttal defenses are distinct from affirmative defenses in that an inferential rebuttal, as the name implies, rebuts part of the
plaintiff’s cause of action, while an affirmative defense relieves the defendant of liability even if all
the elements of a plaintiff’s cause of action are established. See Moulton v. Alamo Ambulance Serv., Inc., 414 S.W.2d 444, 448 (Tex. 1967); Buls v. Fuselier, 55 S.W.3d 204, 211 (Tex. App.—Texarkana 2001, no pet.).  As such, inferential rebuttals need not be
specifically pleaded.

Finally,
Perez argues that Stellar should be estopped from utilizing a “sole proximate
cause” inferential rebuttal defense because Stellar at first sought to have the
murderer’s comparative liability submitted to the jury but was precluded from
doing so because it had not complied with section 33.004 of the Civil Practices
& Remedies Code regarding responsible third parties.  A “sole proximate cause” instruction is proper,
however, if there is evidence that a person’s conduct that is not submitted to
the jury was the sole proximate cause of the occurrence.  See Am.
Jet, Inc., 683 S.W.2d  at 126.  There is no requirement for a party to submit
or obtain comparative negligence findings for all possible responsible parties.

Accordingly,
we overrule issue five.

III. 
FACTUAL SUFFICIENCY

          In issues one through three, Perez
contends that the jury’s negative findings on her premises liability, DTPA, and
fraud claims are against the great weight and preponderance of the evidence.

A.  Standard of Review

To determine whether the evidence was factually sufficient
to support a finding, an appellate court considers and weighs all evidence that
was before the trial court. Cain v. Bain, 709 S.W. 2d 175, 176 (Tex.
1986); Raymond v. Raymond, 190 S.W.3d 77, 82–83
(Tex. App.—Houston [1st Dist.] 2005, no pet.). 
When, as here, an appellant attacks the factual sufficiency of an
adverse finding on an issue for which he had the burden of proof, the appellant
must demonstrate that the adverse finding is against the great
weight and preponderance of the
evidence. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). An
appellate court must not merely substitute its judgment for that of the fact
finder. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003).  We must remember that “[j]urors are the sole judges of the credibility
of the witnesses and the weight to give their testimony.” City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005). “They may chose
to believe one witness and disbelieve another.” Id. “Reviewing courts cannot impose their own
opinions to the contrary.” Id. “Courts reviewing all the evidence in a light
favorable to the verdict thus assume that jurors credited testimony favorable
to the verdict and disbelieved testimony contrary to it.” Id. 


B. 
Premises Liability—Proximate Cause

In a premises liability case, the plaintiff must establish
(1) a legal duty owed to the plaintiff, (2) breach of that duty, and (3)
damages (4) proximately caused by the breach. See Del Lago Partners, 307
S.W.3d at 767. “A complaint that a landowner failed to provide adequate
security against criminal conduct is ordinarily a premises liability
claim.” Timberwalk Apartments,
Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998). “Premises
liability is a special form of negligence where the duty owed to the plaintiff
depends upon the status of the plaintiff at the time the incident occurred.” W.
Inv., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).   When, as here, the plaintiff is an invitee, a
property owner has a duty to use ordinary care to reduce or eliminate an
unreasonable risk of harm created by a premises condition about which the
property owner knew or should have know. 
Del Lago Partners, 307 S.W.3d at
767.  

Perez argues that the jury’s negative finding on whether
Stellar breached its duty to her is against the great weight and preponderance
of the evidence.  Specifically, Perez
argues that Stellar failed to provide basic security measures for the
protection of residents at Crosstimbers Park. Perez’s expert, Bruce Jacobs,
testified that security at the complex was inadequate because Stellar wasn’t
“really doing much of anything in terms of crime prevention posture.”  Specifically, Bruce testified that Stellar
should have collected the relevant crime data from the neighborhood and shared
it with its residents, created a neighborhood watch, and hired a dedicated
patrol for the property.  About specific
conditions on the property, Jacobs recommended additional lighting and fixing
the broken access gate.

Stellar responds that Perez cannot prevail because there was
no evidence that any additional security measures would have prevented the
murder of Patrick Rios.  Essentially,
Stellar argues that any breach it may have committed is not actionable because
it was not the proximate cause of Rios’s murder and that the murderer’s conduct
was an intervening cause. 

Proximate cause is composed of cause in fact and
foreseeability.  Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477
(Tex. 1995).  We review the record to
determine whether a negative finding on proximate cause is against the great
weight and preponderance of the evidence.

1. Cause In Fact

The test for cause in fact is whether a negligent act or
omission was a substantial factor in bringing about the injury and without
which the injury would not have occurred. 
Id.  Cause in fact cannot be established by mere
conjecture, guess, speculation.  Id.

Both experts in this case agreed that adequate security
measures deter some crimes.  However,
both experts also acknowledged that some criminals could not be deterred by
security, and that factors to consider in whether a criminal could be deterred
include whether (1) the crime was planned or impulsive, (2) the criminal made
efforts to conceal himself, (3) whether there were bystanders, (4) whether the
crime was part of a crime spree, (4) whether the perpetrator had a criminal
record, (5) the perpetrator’s mental state, (6) and whether the perpetrator was
intoxicated.

Perez’s expert witness, Jacobs, testified that because the
perpetrator in this case was unknown, he could not opine whether this
particular perpetrator was deterrable. 
Stellar’s expert witness, Moore, testified that it would be “rank speculation”
to suggest that the person who committed the murder would have been deterred by
any additional security.

Because neither expert could say that additional security
measures would have deterred the criminal in this case, there is no evidence
that the lack of security measures was a cause in fact of the murder.  See E.
Tex. Theatres, Inc. v. Rutledge, 453 S.W.2d 466, 469 (Tex. 1970) (holding
no cause in fact because no evidence to show that, had theater employed
sufficient security measures, bottle would not have been thrown); see also Price v. Ford, 104 S.W.3d 331,
333 (Tex. App.—Dallas 2003, no pet.) (holding no cause in fact absent evidence
that additional security measures would have prevented injury).

2. Foreseeability

Generally, there is no legal duty to protect another from a
third person’s criminal acts. Timberwalk, 972 S.W.2d at 756.  However, when one controls the premises, he
has a duty to use ordinary care to protect invitees from “criminal acts of
third parties if he knows or has reason to know of an unreasonable and
foreseeable risk of harm to the invitee.” Id. (quoting Lefmark Mgmt.
Co. v. Old, 946 S.W.2d 52, 53 (Tex. 1997)); see also Del Lago Partners,
307 S.W.3d at 767. This exception applies to a landlord who retains control
over the security and safety of the premises. Timberwalk, 972 S.W.2d at
756. 

A duty of a person
who owns or controls property to protect persons on the property from the risk
of criminal conduct exists, however, only when the risk is so great that it is
both unreasonable and foreseeable. Timberwalk, 972 S.W.2d at 756.  “The foreseeability of an unreasonable risk of
criminal conduct is a prerequisite to imposing a duty of care on a person who
owns or controls premises to protect others on the property from the risk.” Id.
Once this prerequisite has been satisfied, the parameters of the duty must be
determined. Id.  Foreseeability is
the beginning of the determination of the extent of the duty to protect against
a third party’s criminal acts. Id. “Whether such [a] risk was
foreseeable must not be determined in hindsight but rather in light of what the
premises owner knew or should have known before the criminal act occurred.” Id.
at 757. “Foreseeability requires only that the general danger, not the exact
sequence of events that produced the harm, be foreseeable.” Id. at 756
(quoting Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996)).  The foreseeability analysis is the same for
both duty and proximate cause.  Del Lago Partners, 307 S.W.3d at 774.

 “When the ‘general
danger’ is the risk of injury from criminal activity, the evidence must reveal
‘specific previous crimes on or near the premises’ in order to establish
foreseeability.” Timberwalk, 972 S.W.2d at 756 (quoting Walker,
924 S.W.2d at 377). Factors a court should consider when determining whether
third party criminal conduct was foreseeable include: (1) proximity—whether any
criminal conduct previously occurred on or near the property; (2) recency—how
recently such conduct occurred; (3) frequency—how often such conduct occurred;
(4) similarity—how similar the prior conduct was to the conduct that occurred
on the property; and (5) publicity—whether any publicity surrounded the
occurrences to indicate that the property owner knew or should have known about
them.  Id. at 757.

          a. evidence of prior crimes

The jury heard testimony from Perez’s expert witness, Bruce
Jacobs, that in the 23 months prior to Patrick’s murder, there were 18 violent
crimes at 11 other apartment
complexes within a one-mile radius of Crosstimbers Park.  Of these 18 crimes, 16 involved firearms, 11
of the 18 crimes were robberies, and 10 of those were armed robberies.  Sixteen of the 18 crimes were in the common
areas of the apartment complexes. 
Thirteen of the 18 crimes occurred at night.

But, on cross-examination, Jacobs admitted that of the 11
other complexes he included within his study, seven of them had no violent
crime at all.

In addition to the crimes at nearby apartment complexes,
Jacobs studied crime on or near the Crosstimbers premises itself.  During the two years prior to the murder,
there were five crimes that Jacobs classified as violent crimes.  Those are described as follows:

1. 
On January 23, 2004, a man approached the leasing office and attempted
to sexually assault the manager.  After
she escaped to an interior closet and locked the door, the man took her keys,
cell phone, wallet, and car.  No weapon
was used.

 

2. 
On May 26, 2004, a man who was walking in an alley next to Crosstimbers
Park was approached by two other men asking for a dollar.  When the victim failed to stop, one of the
men punched him in the head, then both pushed the victim against a wall and
stole his wallet.  No weapon was used.

 

3. 
On August 29, 2004, a man and his nephew saw some men “messing around
with his car” in the parking lot of Crosstimbers Park.  When the man and his nephew approached the
men to tell them to leave his car alone, they were beaten up.  The perpetrators also damaged his car.  Nothing was stolen and no weapon was used.

 

4. 
On September 12, 2004, a man was riding his bicycle on a street in the
same block as Crosstimbers Park at 2:30 in the morning when a car with three
men pulled up.  The men shouted at the
victim in Spanish, but because the victim did not understand Spanish, he began
to ride away.  At that point, one of the
men pulled a gun and pointed it at the victim. 
The man jumped off his bike and as he ran away, he heard gunshots.  The victim was not injured.  When he returned later, his bicycle was gone.

 

5. 
On June 29, 2005, a stolen car was brought onto the premises of
Crosstimbers Park.  Multiple offenders
were in the process of stripping the stolen car when they were approached by
another man.  An argument escalated
between the men, apparently because the man that approached the offenders had
taken something from the offenders’ apartment. 
One of the men who had been stripping the car went to his car, got a
gun, and started firing.  Everyone,
including the alleged victim, fled.  No
one was injured and nothing was stolen from the victim.

 

          b. 
proximity

Here, 23 violent crimes occurred at apartment complexes
within a one-mile radius of Crosstimbers Park. 
However, of those 23 crimes, 18 of them occurred at complexes other than
Crosstimbers Park.  “[I]t does not
necessarily follow that the prior similar criminal activity must have taken
place at the premises; it is required only that the criminal act or acts
occurring near the premises in question give notice of the risk that crime may
travel to the premises of the business owner.” 
Timberwalk, 972 S.W.2d at 757
n.36 (quoting Gans v. Parkview Plaza
P’ship, 253 Neb. 373, 571 N.W.2d 261, 268 (1997)).  Stellar’s expert, Merlyn Moore, testified,
and the jury could have reasonably believed, that these 18 crimes had little
relevancy to the foreseeability of harm on the Crosstimbers Park premises
because there was no evidence that crime was “spilling” from those complexes
onto Crosstimbers Park.

Of the remaining five violent crimes, three were actually on
the Crosstimbers Park premises, but two occurred outside its perimeter on
adjacent streets or alleys.

          c. 
recency & frequency

Regarding recency and frequency, “[a] criminal act is more
likely foreseeable if numerous prior crimes are concentrated within a short
time span than if few prior crimes are diffused across a long time span.”  Trammell
Crow Cent. Tex., Ltd. v. Gutierrez, 267 S.W.3d 9, 15 (Tex. 2008).  Of the five crimes occurring on or adjacent
to Crosstimbers Park, the most recent occurred approximately six months before
the murder.  Before that, the most recent
offense was September 2004—over a year before the murder.  Here, there were four violent crimes in 2004,
but only two in 2005.  The trend, if any,
seemed to signal a reduction in crime, not an increase.  

d. 
similarity

“Foreseeability does not require ‘the exact sequence of
events that produced the harm to be foreseeable,’ rather, previous crimes need
only be ‘sufficiently similar to the crime in question as to place the
landowner on notice of the specific danger.’” 
Trammell Crow, 267 S.W.3d at
16.  We thus consider the similarity of
the five crimes occurring on or adjacent to Crosstimbers Park to determine
their similariy to the murder in this case.

The first crime was an attempted rape of the apartment
manager in her office, but it occurred nearly two years before this
murder.  When the victim escaped, the
perpetrator fled with her possessions. 
Unlike the murder in question, no weapon was used.

The second crime was an attempted panhandling that escalated
to robbery when the victim did not cooperate. 
The crime occurred outside the perimeter of the apartment complex in a
nearby alley, not in the complex itself. 
No weapon was used.

The third crime occurred when a man and his nephew approached
someone who was “messing with his car.” 
When confronted, the man and his nephew were beaten and his car was
damaged.  There was no robbery and no
weapon used.

The fourth crime was the robbery of the man on the
bicycle.  The robbery occurred on the
street near the apartment complex, not in the complex itself.  Although a gun was used, it was fired only
after the victim fled on foot.  No one
was injured.

The fifth crime involved a man approaching several men who
were “stripping” a stolen car in the parking lot.  After an argument over property that the
victim had apparently stolen from the men stripping the car, one of the men
retrieved and fired a gun.  No one was
seriously injured and nothing was stolen from the victim.  A jury could reasonably believe that this was
not a random crime of opportunity.

e. 
publicity

Although there was evidence that Stellar knew about the
crime occurring on its premises, there is no evidence in the record about
whether Stellar was aware of the crimes that did not occur on its premises.

There were five violent crimes on or adjacent to the complex
in the previous two years.  See Trammel Crow, 267 S.W.3d at 17
(holding, despite 10 violent crimes in shopping center in previous 23 months,
murder was not foreseeable).  Of these
five previous crimes, none involved a murder, and only one was a
stranger-on-stranger armed robbery, which occurred on the street outside the
complex when a bicycle was stolen at gunpoint. 
Of these five crimes, a gun was used twice and, in one instance in which
a gun was used, the dispute was a personal matter, not a stranger-on-stranger
armed robbery.  Considering the evidence
before the jury in light of the Timberwalk
factors, we cannot conclude that the jury’s negative finding on foreseeability
was against the great weight and preponderance of the evidence.  The jury could have reasonably concluded that
Rios’s murder was unlike any crime previously committed at Crosstimbers Park
and that Stellars “could not have reasonably foreseen or prevented the crime.”  See
Trammel Crow, 267 S.W.3d at 17. 

3. Conclusion Regarding Premises
Liability—Proximate Cause

Based on the evidence presented in this case, the jury could
have reasonably concluded that Stellar’s failure to provide adequate security
was neither a cause in fact of Rios’s death, nor was the death
foreseeable.  Thus, a negative finding by
the jury on proximate cause is not against the great weight and preponderance
of the evidence. 

Having determined that the evidence is factually sufficient
to support the jury’s failure to find proximate cause, we overrule Perez’s
first issue on appeal.

C. 
DTPA AND Fraud Claims

          In her second and third issues on
appeal, Perez contends that the jury’s negative findings on her DTPA claim are
against the great weight and preponderance of the evidence.  To recover under the DTPA, Perez had to
prove: (1) that she was a consumer; (2) that Stellar engaged in false,
misleading, or deceptive acts, and (3) that those acts were a producing cause
of her damages.  See Tex. Bus. & Com.
Code Ann. § 17.50(a)(1) (Vernon 2008). 
To recover for fraud, Perez had to prove that Stellar made (1) a
material representation, (2) that was false, (3) that Stellar knew the
representation was false or made the statement recklessly without any knowledge
of the truth, (4) that the representation was made with the intent that Perez
rely on it, (5) that Perez acted in reliance on the representation, and (6)
thereby suffered injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life
Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). 
Both causes of action are based on Perez’s testimony that she asked
Nunez whether Crosstimbers Place was safe, and Nunez responded, “Yes.”  Perez further testified that, based on this
representation, she decided to move into the apartment.

          In support, Perez relies on Mitchell v. Brandon Mill Assoc. Ltd.,
No. 05-96-00688-CV, 1998 WL 548822 (Tex. App.—Dallas Aug. 31, 1998, pet.
denied).  In Brandon, a tenant who was raped in her apartment brought a DTPA
claim against the complex owner based on a representation the owner that the
premises were safe.  Id. at *1.  The trial court granted the owner’s motion
for directed verdict, but the appeals court reversed, holding that there was
more than a scintilla of evidence to show that the owner made false
representations about security.  Id.

          Brandon
Mills is procedurally distinguishable.  In that case, the trial court granted a
directed verdict.  The appeals court then
reversed because there was a scintilla of evidence to support sending the case
to the jury on the DTPA claim.  Here, the
trial court submitted the DTPA and fraud claims to the jury, and the jury
rejected them.  

          The jury could have disbelieved Perez
when she testified that she decided to move into the apartment based on Nunez’s
representation that the complex was safe. 
The jury is the judge of the credibility of the witnesses.  Neese
v. Dietz, 845 S.W.2d 311, 314–15
(Tex. App.—Houston [1st Dist.] 1992, writ denied).  There was also evidence that Perez chose the
apartment because it was right across the street from her work.  If the jury disbelieved Perez regarding why
she chose the apartment, then her DTPA claim lacked the element of “producing
cause.”  See Cianfichi v. White House
Motor Hotel, 921 S.W.2d 441, 444 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (holding no producing cause on DTPA claim when
evidence showed that plaintiff chose hotel because of proximity to sports
arena, not for its security).  Perez’s fraud
claim similarly would be lacking the element of reliance if the jury
disbelieved, as it could have, her statement that she rented the apartment
based on Nunez’s representation that it was safe. See Pain Care Ctr., Inc. v. O’Connor & Hannan, L.L.P., No.
14-06-00166-CV, 2007 WL 2766755, at *5–6
(Tex. App.—Houston [14th Dist.] Sept. 25, 2007, no pet.) (memo op.) (upholding
jury’s failure to find fraud because it could have disbelieved plaintiff’s
testimony that she relied on misrepresentation). Even had the jury believed
that Nunez made the representation, it could also have reasonably concluded that
it was not false when it was made.  Such
a finding by the jury would be consistent with its determination that the murder
was not foreseeable.

          Because both the fraud and DTPA claims
hinge on the credibility of the witnesses, and the jury is the judge of their
credibility, we cannot say that its negative findings on those issues are
against the great weight and preponderance of the evidence.

          Accordingly, we overrule issues two
and three.

IV. 
EXCLUSION OF EVIDENCE

In issue four, Perez contends that the trial court erred by
refusing to allow her expert to testify about 28 nonviolent crimes that had
occurred at Crosstimbers Park during the 23-month period before the murder.

A. Standard of Review

The trial court has broad discretion to determine admissibility of evidence; as such, a reviewing court will reverse only if there is an abuse of that discretion.  Helena Chem. Co. v.
Wilkins, 47 S.W.3d 486, 499 (Tex. 2001).  A trial court abuses its discretion only when
it acts in an unreasonable and arbitrary manner, or when it acts without
reference to any guiding principles. Strauss v. Cont’l
Airlines, Inc., 67 S.W.3d 428, 449 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We must uphold the trial courts
evidentiary ruling if there is any legitimate basis for it. Owens-Corning Fiberglass
Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).

B. Analysis

On appeal, Perez contends that the nonviolent crimes were
admissible (1) to show foreseeability under the Timberwalk factors, and (2) to prove other issues such as the inadequacy
of the security measures taken at the apartment complex.

Evidence, even if relevant, may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues,
misleading the jury, or by considerations of undue delay or needless
presentation of cumulative evidence. Tex.
R. Evid. 403.  At trial, Stellar
argued that the relevance of the nonviolent crimes was outweighed by its
prejudicial value.  The trial court could
have reasonably concluded that the relevancy of nonviolent crimes was slight
because of their dissimilarity to the murder in question, and thus, their
prejudicial value outweighed their relevance. 
Perez does not challenge the exclusion of the evidence under Rule
403.  Thus, we must uphold the trial
court’s ruling on this basis.

          We overrule point of error four.

 

 

V.  CONCLUSION

We
affirm the judgment of the trial court.

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 











[1]           The requested instruction provided as
follows:

 

You are instructed
that [Stellar] owed Patrick Rios and Kathryn Perez a duty to use ordinary care
in protecting them from the criminal acts of third parties.