Opinion issued February 9, 2012.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00051-CV

———————————

Alfred E. West, Jr. and Maria F. West, Appellant

V.

Elizabeth
West, Appellee



 



 

On Appeal from the 306th District Court

Galveston County, Texas



Trial Court Case No. 07FD1370

 



 

MEMORANDUM OPINION

          Alfred
and Maria West appeal from a final judgment after a bench trial on Elizabeth
West’s fraud claim against them, brought in connection with her divorce from Greg
West, who is Alfred and Maria’s son. In two issues, Alfred and Maria challenge
the legal and factual sufficiency of the evidence to support the trial court’s
findings on fraud and damages. We affirm.

Background

          In
her petition for divorce from Greg West, Elizabeth West also asserted a claim
against Greg and his parents, Alfred and Maria, for conspiring to defraud her
out of community property. Elizabeth asserted that Greg’s parents purchased
property in Kerrville, Texas shortly after she and Greg were married; Greg and
his parents led her to believe she and Greg were purchasing an ownership
interest in the property; she and Greg made monthly payments on the property
out of their community estate and paid to improve the property with a road to
the main highway, a fence, and a canopy shed for their travel trailer; she and
Greg vacationed and hunted on the property regularly; and Greg’s parents did
not inform her that she and Greg had no ownership interest in the property and
its improvements until she filed for divorce. Alfred and Maria assert that Elizabeth
had no basis for her belief that she and Greg had an interest in the property
and that the payments Elizabeth and Greg made were not payments toward the
purchase of the property, but instead, rental payments pursuant to a lease
entered into between them and Greg.

          After
a bench trial, the trial court concluded that Greg and his parents committed a
fraud on Elizabeth and Greg’s marital estate with respect to the Kerrville
property and that the lease was executed by Greg without Elizabeth’s knowledge.
On this basis, the trial court found that the community estate was entitled to
reimbursement from Alfred and Maria in the amount of $30,000 and entered
judgment accordingly. Alfred and Maria appeal from the trial court’s judgment
against them.

Sufficiency of the Evidence

Alfred and Maria assert that there
is no evidence or insufficient evidence to support the trial court’s findings
on fraud and damages. The
trial judge’s findings of fact in a bench trial have the same force and dignity
as a jury verdict and are reviewed under the same legal and factual sufficiency
standards. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).
As the trier of fact, the trial court was the sole judge of the credibility of
the witnesses and the weight to be given their testimony. See Iliff v. Iliff, 339 S.W.3d 74, 83 (Tex. 2011) (citing
Montgomery Indep.
Sch. Dist. v. Davis, 34
S.W.3d 559, 567 (Tex. 2000)); City
of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005).


In conducting a legal-sufficiency review, we consider
whether the evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review. City of Keller, 168 S.W.3d at 827; Wright v.
Wright, 280 S.W.3d 901, 908 (Tex. App.—Eastland 2009, no pet.) (applying standards in divorce appeal involving fraud on the
community). We credit favorable evidence if a reasonable factfinder
could and disregard contrary evidence unless a reasonable factfinder
could not. City of Keller, 168 S.W.3d at 827; Wright, 280 S.W.3d at 908. We review the evidence in the light
most favorable to the verdict and indulge every reasonable inference that
supports it. City of Keller, 168 S.W.3d at 822;
Wright, 280 S.W.3d at 908. We will set aside the trial court’s finding
under this standard only if the record shows: (1) a complete absence of
evidence of a vital fact, (2) rules of law or evidence bar the court from
giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the
evidence establishes conclusively the opposite of the vital fact. City of
Keller, 168
S.W.3d at 810.

In conducting a factual-sufficiency review, we examine the
entire record, considering both the evidence in favor of, and contrary to, the
challenged finding. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Wright,
280 S.W.3d at 908. Under this standard, we set aside the fact finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986);
Wright, 280 S.W.3d at 908.

A.      Fraud on the Community

Fraud on the community can be committed through actual or
constructive fraud. Strong v. Strong, 350 S.W.3d 759, 771 (Tex. App.—Dallas
2011, pet. filed). To establish actual fraud, Elizabeth had to show that Greg
and his parents (1) made a material misrepresentation (2) that they knew to be
false or made recklessly without any knowledge of the truth (3) with the intent
that she rely on it, (4) and she acted in reliance on the representation, (5) resulting
in her injury. See Perez v. DNT Global Star, L.L.C.,
339 S.W.3d 692, 705 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001)). Constructive
fraud, on the other hand, does not require a showing of all of the elements of
actual fraud; it “may be shown if one spouse unfairly deprives the other spouse
of the benefit of community property.”[1]
Strong v. Strong, 350 S.W.3d 759, 771
(Tex. App.—Dallas 2011, pet. filed) (citing Wright
v. Wright, 280 S.W.3d 901, 908–09 (Tex. App.—Eastland 2009, no pet.); see also Knight v. Knight, 301
S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Courts may consider
“fairness” factors in reviewing a spouse’s claim of constructive fraud against
the community: the size of the property disposed of in relation to the total
size of the community estate, the adequacy of the estate remaining to support
the innocent spouse after disposition of the divorce, and the relationship of
the parties involved in the transaction. See
Knight, 301 S.W.3d at 731; Massey v. Massey, 807 S.W.2d 391, 402
(Tex. App.—Houston [1st Dist.] 1991), writ
denied, 867 S.W.2d 766 (Tex. 1993).

Parents who conspire with their children to perpetrate a
fraud on the community estate of the children and their spouses may be held
liable in a divorce action to the extent of the property wrongfully obtained by
the parents. See Schlueter v. Schlueter,
975 S.W.2d 584, 589–90 (Tex. 1998) (holding that claim for fraud on community is
not independent cause of action and would not support punitive damages award
but could be considered in division of community property in divorce action; affirming
monetary award in divorce action against husband’s father based on transfer of community
assets to father immediately prior to divorce); Chu v. Hong, 249 S.W.3d 441, 445 (Tex. 2008) (“Hong notes correctly
that in Schlueter we did not decide whether
torts against the community estate could be alleged against a third-party.
As a general matter, they clearly can; if a third party steals community property, surely either spouse or both can
seek recovery in tort for it.”). Generally, the remedy available is limited to
recovery of the fraudulently obtained property or damages limited to the value
of the property transferred. See Chu, 249 S.W.3d at 446 (comparing common law remedies to
remedies under Uniform Fraudulent Transfer Act).

          Elizabeth presented evidence at trial to
support her contention that Greg and his parents tricked her into making
payments out of the community estate toward the purchase and improvement of the
Kerrville property by leading her to believe that she and Greg had an ownership
interest in the property. She testified that she and Greg and his parents had
agreed to be partners in the purchase of the Kerrville property and that the
monthly payments she and Greg made to Charles Killebrew,
the property’s former owner, were purchase payments. She placed in evidence
carbon copies of checks written to Killebrew, many of
which indicated that they were payments on a “lot note” or “land note.” 

Greg admitted that the funds used
to make these payments were community funds. He testified that he and Elizabeth
made these payments to Killebrew on behalf of his
father because he owed his father money. He further testified that he and
Elizabeth made the final payment on the purchase note for the property, at
which time Killebrew released the lien on the
property. Greg admitted that there was nothing in writing to support his
contention that he owed his father money at the times he and Elizabeth made the
payments on the property note. 

          Alfred
testified that Greg and Elizabeth made the payments to Killebrew
as lease payments under a lease agreement between Greg and his parents. Elizabeth
testified that Greg and his parents did not tell her about the lease agreement until
she filed for divorce, when they claimed for the first time that her and Greg’s payments on the property were actually lease
payments. The lease agreement is dated November 1, 2000. It obligates Greg to
pay his parents $350 per month from November 1, 2000 through November 1, 2001.
Alfred testified that he could not recall how many $350 payments he received from
Greg during the term of the lease. The checks in the record reflecting payments
from Greg and Elizabeth’s community estate to Killebrew
are dated between 2002 and 2008—all after
the lease expired. None of the checks in the record are in the amount of $350.

Elizabeth testified and provided
evidence that she and Greg paid for improvements to the Kerrville property,
such as building a road and having electricity and plumbing installed, but that
Alfred and Maria did not bear any of the expense for improving the property. She
also testified that she had discussed the Kerrville property with Greg, and
they had agreed that they were investing in the property. She testified that he
never told her that they were leasing the property.

In light of the evidence, the trial
court could reasonably have concluded that Greg and his parents “unfairly deprive[d
Elizabeth] of the benefit of community property.” Strong, 350 S.W.3d at 771. Her testimony
and exhibits at trial are some evidence that Greg and his parents misled her about the
ownership of the Kerrville property and that, as a result, she contributed
community funds to improve the property and pay off the purchase note on the
property. Although Greg, Alfred, and Maria disputed Elizabeth’s recitation of
the facts, the trial court, as the factfinder, was
the sole judge of the witnesses’ credibility and was free to credit Elizabeth’s
testimony and discredit Alfred’s and Maria’s testimony. See Iliff, 339 S.W.3d at 83. Additionally,
the amount of the fraudulently obtained property, which the trial court
determined to be $30,000, is considerable in relation to the total size of the
community estate, which did not include a home or any other real property. See Knight, 301 S.W.3d at 731 (noting
that the court may consider the fairness of the transaction in terms of the
size of the property disposed of in relation to the total size of the community
estate); Massey, 807 S.W.2d at 402 (same).

We hold that the trial court’s fraud finding is supported by
more than a scintilla of evidence and is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. See City of Keller, 168
S.W.3d at 810; Pool, 715
S.W.2d at 635; Wright, 280 S.W.3d at 908; see also Stevenson v. Koutzarov, 795 S.W.2d 313, 322 (Tex. App.—Houston
[1st Dist.] 1990, writ denied) (holding that there was legally sufficient
evidence of fraud on estate when friends sought reimbursement from husband for
expenditures allegedly for wife but evidence raised question of whether
expenditures were actually incurred for wife). We overrule Alfred and Maria’s
first issue.

B.      Damages

          The parties do not dispute that the
purchase price for the Kerrville property was $30,000, part of which was
reflected in a $26,500 purchase note. The check carbons in evidence establish that
Elizabeth and Greg made the following payments to Killebrew: $545.08 in November 2002, $272.54 in
January 2003, $545.08 in March 2003, $445.00 in August 2003, $408.81 in March
2004, $408.54 on an unknown date (with a check number coming after the March
2004 payment and before the February 2008 payment), and $741.12 in February
2008. But Elizabeth testified that she and Greg paid approximately $24,000 or
$25,000 to purchase the property in Kerrville. She testified that the checks in
evidence were only examples of the property payments they made because she
could not find any other check carbons. 

Alfred testified that he and Maria
paid for the Kerrville property. As discussed above, he testified that the
payments made by Greg and Elizabeth were made on his and Maria’s behalf because
Greg owed him for lease payments. Neither Alfred nor Maria testified as to what
payments, if any, they made toward the purchase of the property directly. 

The record also contains evidence
of expenditures on improvements to the Kerrville property paid for out of Greg
and Elizabeth’s community estate. Testimony and check carbons in the record
demonstrate payments of $200 toward procuring use of a septic tank for the
property and $300 for a well permit. Photos in evidence showed the deer blind
on the property. There was testimony and photographic evidence regarding a carport
Elizabeth and Greg built on the property that they could park a trailer under.
There was also evidence that they paid to have electricity installed at the
Kerrville property. Elizabeth testified that she and Greg spent more than
$25,000 on improvements to the Kerrville property.

As the sole judge of credibility, the trial court was free
to believe Elizabeth’s testimony that the community estate made payments of
$24,000 to $25,000 on the purchase note for the Kerrville property and to
disbelieve Alfred’s testimony that he and Maria paid the purchase price. See Iliff, 339
S.W.3d at 83. While the parties disputed the purpose of the improvements
Elizabeth and Greg made to the Kerrville property, it was undisputed that
Elizabeth and Greg made improvements to the property. Elizabeth testified that
the community expended more than $25,000 in making such improvements, and no
party presented evidence contradicting that assertion. 

Elizabeth’s testimony and exhibits relating to the amount of
the expenditures made by her and Greg’s estate on the Kerrville property and
improvements thereto is evidence of the value wrongfully obtained by Alfred and
Maria from the community estate. See Chu, 249 S.W.3d at 446 (observing that damages for conspiracy to defraud community estate are generally
limited to recovery of wrongfully obtained community property or its value). The trier of fact generally has
discretion to award damages within the range of evidence presented at trial. Gulf
States Utils. Co. v. Low, 79 S.W.3d 561, 566
(Tex. 2002) (citing Price Pfister, Inc. v. Moore
& Kimmey, Inc., 48 S.W.3d 341, 352 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied)). The evidence at trial ranged from $0, according to Alfred and Maria’s
testimony, to $50,000 according to Elizabeth’s testimony. The trial court’s
$30,000 damages finding falls within that range. 

We therefore hold that the trial court’s damages award is supported
by more than a scintilla of evidence and is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. See City of Keller, 168
S.W.3d at 810; Pool, 715
S.W.2d at 635; Wright, 280 S.W.3d at 908; see also Mazique v. Mazique,
742 S.W.2d 805, 807 (Tex. App.—Houston [1st Dist.] 1987, no writ) (holding that
there was legally and factually sufficient evidence to support trial court’s
$30,000 award of damages based on fraud on community when award was “within the
range of the evidence showing the amount of cash that the appellant had taken
from the community funds, and for which no accounting was ever made.”). We overrule
Alfred and Maria’s second issue.

Conclusion

          We hold
that the evidence is sufficient to support the trial court’s findings on fraud
and damages. We therefore affirm the trial court’s judgment.

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack, Justices Higley and Brown.











[1]           A fiduciary duty exists between a
husband and a wife as to their jointly controlled community estate. Knight v. Knight, 301 S.W.3d 723, 731 (Tex. App.—Houston
[14th Dist.] 2009, no pet.) (citing Zieba v. Martin, 928 S.W.2d 782, 7890 (Tex.
App.—Houston [14th Dist.] 1996, no pet.)). The breach of this fiduciary
relationship constitutes a “fraud on the community”—a judicially created
concept based on constructive fraud. Id. Such conduct amounts to a
fraud, even when the evidence does not establish the elements of actual fraud,
because it violates the marital trust and has the effect of depriving one
spouse of an interest in jointly-owned property. Id.