**Monica Faye KNIGHT, Appellant,**

v.

**Bobby Wayne KNIGHT, Appellee.**

**No. 14–08–00424–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 29, 2009.

George W. Dana, Houston, TX, for Appellant.

Gene E. Putnam, Houston, TX, for Appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Monica Faye Knight, appeals the final decree of divorce entered by the

trial court in connection with her divorce from appellee, Bobby Wayne Knight. In one issue, Monica contends that the trial court's division of the marital estate was manifestly unfair and constituted an abuse of discretion because the court (1) erroneously valued the properties awarded to her; (2) refused to grant her reimbursement claims; and (3) failed to factor in Bobby's fault in the dissolution of the marriage. We affirm in part and reverse and remand in part.

## I. FACTUAL BACKGROUND

Monica and Bobby entered into a common law marriage in 1994. On December 16, 2000, they were ceremonially married. No children were born of the marriage. On July 6, 2007, Bobby filed a petition for divorce, and on July 19, 2007, Monica filed a counter-petition for divorce. Following a bench trial, the trial court signed the final decree of divorce on February 29, 2008.

During the course of their marriage, Monica and Bobby invested in real property but failed to follow procedures necessary to preserve the integrity of the respective marital estates. In 1995, they purchased two houses. The first, located at 9310 Forest Dale ("the Forest Dale property"), was paid in full in 1998. The second one was located at 9314 Talton ("the Talton property"). The two proper-

ties, the titles to which were taken only in Bobby's name, were used periodically as rental properties.

In 1996, the parties purchased a house located at 8006 Mayhaw ("the Mayhaw property") which became the marital residence until their separation. In 1998, they purchased another house located at 9313 Forest View ("the Forest View property") from Monica's brother and sister-in-law, Edwin and Penny Griffin. As with the previous properties, the titles to these two properties were taken only in Bobby's name.

On May 7, 1999, Bobby conveyed a 50% interest in the Forest Dale and Talton properties to Monica.[1] On November 24, 1999, Bobby deeded his remaining 50% interest in the Forest Dale and Talton properties to her.[2]

In October 2002, as a result of the damage caused by Tropical Storm Allison, the Harris County Flood Control District purchased the Forest View and Forest Dale properties. On October 7, 2002, the Forest Dale property was purchased for $63,000. On October 18, 2002, the Forest View property, which had a $30,000 lien, was purchased for $64,000. On October 16, 2002, Monica wrote a check to Bank One for $45,769.47 to retire the mortgage on the Mayhaw property.[3]

---

1. In 1999, due to marital difficulties, Bobby left Monica for two weeks. After he returned, he offered to place the Forest Dale and Talton properties in both of their names. According to Bobby, his intention in conveying the interests was to allay Monica's concern that he might mortgage or sell them without her consent. However, Monica testified that he did so to assure her that he would not leave her again.

2. The parties also dispute the reason for this subsequent transfer. At trial, Bobby testified that they jointly decided to deed the entire interest in the properties to her to prevent the assets from being seized to satisfy a separate

property judgment against him. However, Monica maintains that he deeded the entire interest in those properties to her to again reassure her that he would not leave her.

3. The parties dispute the source of the funds used to retire the mortgage on the Mayhaw property. Monica contends that only the proceeds from the sale of the Forest Dale property were used, but Bobby asserts that the combined proceeds from the sale of the Forest Dale and Forest View properties were used. In light of our disposition of this appeal, we need not make this determination.

In 2005, Monica and her sister, Wendy, each inherited a 50% interest in a house located at 9105 Lazydale from their father's estate. In 2006, Monica borrowed $65,000. This loan was secured by a home equity lien on the Talton property, part of Monica's separate estate. From the loan proceeds, $20,000 was used to purchase the remaining 50% interest in 9105 Lazydale from Wendy, and $40,000 was used to purchase a house located at 9109 Lazydale that had been inherited by Rommel Griffin, Monica's brother. Monica testified that the latter sale was subject to a promise that in the event she decided to sell the house, she would first offer to sell it back to Rommel for $40,000. The remaining $5,000 was used to re-roof the two Lazydale properties.

In addition to the real property above, the parties' other marital property subject to division by the court included Monica's 401(k), ten cemetery plots, Monica's car, and Bobby's truck.

In her pleadings and at trial, Monica sought a disproportionate division of the community estate based on, among other things, fault in the breakup of the marriage, fraud on the community, community indebtedness, wasting of community assets and the creation of community property through the use of her separate estate. Additionally, she sought reimbursement to the community for funds expended by the community estate for the payment of unsecured liabilities of Bobby's separate estate.

In support of her claim that Bobby was at fault for the break-up of the marriage, Monica testified that Bobby left her four times during the marriage, leaving only a note each time. On the third occasion, he staged his own abduction and left a $50,000 ransom note. After returning home, he told Monica that his abductors were going to kill her and "do something to her entire family" if she did not pay the ransom. Monica testified that, due to this incident, she suffered a breakdown. She also testified that Bobby had become obsessed with pornography during the marriage and, as a result, refused intimacy with her. Bobby did not dispute this testimony.

In support of her claim of fraud on the community, Monica testified that Bobby had paid his ex-wife $500 a month for eighteen months while Monica and Bobby were married. Bobby testified that he paid his ex-wife longer than ordered to do so by the court so that she could complete her college studies and obtain a degree. He further testified that Monica knew about the payments when they began dating, but admitted later telling her that he had stopped paying his ex-wife. In addition, Monica claimed that Bobby had paid a separate property judgment debt in the amount of $8,139.84 with community funds.

At the conclusion of trial, the court orally rendered its judgment. On February 29, 2008, the court signed the final divorce decree, granting the divorce on the grounds of insupportability and mental cruelty. In the decree, the court confirmed a 50% interest in 9105 Lazydale and a 100% interest in the Talton property, subject to and with the assumption of the $65,000 mortgage, as Monica's separate property.[4] In dividing the community estate, the court awarded the following property to Monica: (1) her 401(k); (2) her car; (3) the Mayhaw property, subject to a $42,000 promissory note to Bobby; (4) a 25% interest in 9105 Lazydale (in addition to the 50% interest confirmed as her sepa-

---

4. Monica's separate property also included her father's 1977 Chevrolet truck and the jewelry, household items, furnishings, and fixtures listed on her Inventory and Appraisement filed with the court. Bobby's separate property consisted of a gold wedding ring, gold watch, and gold rope chain. The parties do not dispute these findings.

rate property); (5) a 50% interest in 9109 Lazydale; and (6) 50% of the cemetery plots, subject to 50% of the debt. The court awarded the following property to Bobby: (1) his truck; (2) a 25% interest in 9105 Lazydale; (3) a 50% interest in 9109 Lazydale; (4) a $42,000 promissory note secured by the Mayhaw property; (5) and 50% of the cemetery plots, subject to 50% of the debt.

Following entry of the final divorce decree, Monica filed a request for findings of fact and conclusions of law. After she filed a notice that they were past due, the court filed its findings and conclusions. Monica filed a motion for new trial which the trial court denied. Monica timely filed her notice of appeal.

## II. STANDARD OF REVIEW

■ We review a trial court's division of community property for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981).[5] The test for an abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex.App.-Houston [14 Dist.] 2008, pet. dism'd w.o.j.). A trial court's division need not be equal and may take into consideration many factors, such as the spouses' capacities and abilities, benefits which the party not at fault would have derived from a continuation of the

marriage, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity in age, size of separate estates, the nature of the property, and disparity in income and earning capacity. *See Murff*, 615 S.W.2d at 699; *Markowitz v. Markowitz*, 118 S.W.3d 82, 90–91 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

■ A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *See LaFrensen v. LaFrensen*, 106 S.W.3d 876, 877 (Tex.App.-Dallas 2003, no pet.). However, because the trial court's discretion is not unlimited, there must be some reasonable basis for an unequal division of the property. *See Smith v. Smith*, 143 S.W.3d 206, 214 (Tex.App.-Waco 2004, no pet.). Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are merely relevant factors in assessing whether an abuse of discretion has occurred. *See Stavinoha v. Stavinoha*, 126 S.W.3d 604, 608 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

## III. DIVISION OF MARITAL ESTATE

In its findings and conclusions, the trial court identified the assets of the community estate and valued them as follows:

| Asset | Value |
|---|---|
| (1) the Mayhaw property | $87,000.00 |
| (2) 9109 Lazydale | $53,173.00 |
| (3) 50% interest in 9105 Lazydale | $25,868.50 |
| (4) Monica's 401(k) | $44,223.53 |
| (5) Cemetery Plots | |
| (a) Lot 337, Section 48, Spaces 4 & 5 | $ 4,640.66 |
| (b) Lot 337, Section 48, Spaces 5 & 6 | $ 4,672.00 (amount owed: $ 2,883.90) |
| (c) Lot 336, Section 48, Spaces 1–6 | $15,930.50 (amount owed: $14,725.92) |
| (6) Bobby's truck | $0 |

**5.** In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX FAM. CODE ANN. § 7.001 (Vernon 2006).

(7) Monica's car          $ 7,000.00

In the final decree, the court divided the community property between the parties as follows:

| Monica | Value |
|---|---|
| (1) the Mayhaw property ($87,000–$42,000 promissory note to Bobby) | $ 45,000.00 |
| (2) 50% interest in 9109 Lazydale | $ 26,586.50 |
| (3) 25% interest in 9105 Lazydale | $ 12,934.25 |
| (4) Monica's 401(k) | $ 44,223.53 |
| (5) Monica's car | $ 7,000.00 |
| (6) 50% interest in cemetery plots ($12,-621.58)—50% of balance due ($8,804.91) [6] | $ 3,816.67 |
| **Total Value of Award** | **$139,560.95** |
| Bobby | Value |
| (1) 50% interest in 9109 Lazydale | $ 26,586.50 |
| (2) 25% interest in 9105 Lazydale | $ 12,934.25 |
| (3) promissory note on Mayhaw property | $ 42,000.00 |
| (4) 50% interest in cemetery plots ($12,-621.58)—50% of balance due ($8,804.91) | $ 3,816.67 |
| (5) Bobby's truck | $0 |
| **Total Value of Award** | **$ 85,337.42** |

In the decree and its findings and conclusions, the court also identified the following assets as Monica's separate property and valued them as follows:

| Asset | Value |
|---|---|
| (1) 50% interest in 9105 Lazydale | $25,868.50 |
| (2) the Talton property [7] | $72,383.00 |
| (3) Monica's father's truck | $ 500.00 |
| (4) all of the jewelry, household items, furnishings, and fixtures listed on Monica's Inventory | no value provided |

## IV. ANALYSIS

On appeal, Monica contends that the trial court's division of the community estate was manifestly unjust and constituted an abuse of discretion. Specifically, she complains that the court failed to take into account (1) the $7,000 loan against her 401(k) and (2) the $65,000 home equity loan against the Talton property in its valuation of those assets. She also challenges the court's refusal to reimburse (1) her separate estate for the $45,769.47 in loan proceeds from the sale of the Forest Dale property used to pay off the mortgage on the Mayhaw property, and (2) the community estate for payment of Bobby's separate property judgment debt and payments to Bobby's ex-wife. Further, Monica contends that although the trial court granted the divorce, in part, on the ground

6. In her brief, Monica values a 50% interest in these plots at $12,621.98, and 50% of the debt at $3,521.96, resulting in an award to each party of $9,100.02. The source for her calculation of the outstanding debt is unclear. Our valuation of the debt on this property is based on the "amounts owed" reflected in the trial court's findings and conclusions.

7. Although the trial court found that Bobby and Monica had acquired the Talton property during their marriage, it also found that Bobby had deeded the property to Monica as a gift and, therefore, it belonged to her separate estate.

of mental cruelty, it failed to consider such cruelty in its division.

## A. Waiver

■ As to her claims regarding the court's valuation of her 401(k) and its refusal to reimburse her separate estate for the $45,769.47 in loan proceeds from the sale of the Forest Dale property used to pay off the Mayhaw property mortgage, Monica has waived these complaints on appeal. To preserve an issue for appellate review, a party must bring her complaint to the trial court's attention by timely request, objection, or motion. *See* TEX. R.APP. P. 33.1; *Swaab,* 282 S.W.3d at 527 (concluding husband's failure to complain to trial court about provision in divorce decree ordering him to assume 100% of federal income tax liability that arose during marriage failed to preserve issue for appellate review). If the matter is not presented to the trial court, the trial court has no opportunity to rule on the issue or to correct its ruling if it is made in error. *In re Marriage of Lendman,* 170 S.W.3d 894, 898 (Tex.App.-Texarkana 2005, no pet.) (noting trial court has no opportunity to rule on issue or to correct ruling made in error where matter is not presented to court) (citing *Lewis v. Tex. Employers Ins. Ass'n,* 151 Tex. 95, 246 S.W.2d 599, 600 (1952)); *see also In re D.W.,* 249 S.W.3d 625, 643–44 (Tex.App.-Fort Worth 2008, pet. denied) (recognizing goals of civil trial and appellate procedural schemes include providing trial court ample opportunity at every step of trial proceedings to cure its errors, grant new trial when needed, and allow meritorious claims to be reviewed and corrected on appeal).

A review of the record indicates that Monica did not present her complaints to the trial court regarding its valuation of her 401(k) and its refusal to reimburse her separate estate for the $45,769.47 in loan proceeds from the sale of the Forest Dale property. She did not object when the court orally rendered its judgment at the conclusion of the hearing or raise the issues in her motion for new trial. *See Swaab,* 282 S.W.3d at 530–31 (finding husband's failure to object to imposition of lien on his separate property, or otherwise bring complaint to trial court's attention, waived any error on appeal); *Stallworth v. Stallworth,* 201 S.W.3d 338, 349 (Tex.App.-Dallas 2006, no pet.) (concluding wife's failure to complain of discrepancy between trial court's oral rendition and final divorce decree related to division of retirement proceeds waived any error on appeal). Having failed to present her complaints regarding the court's valuation of her 401(k) and its refusal to reimburse her separate estate for the $45,769.47 in loan proceeds from the sale of the Forest Dale property to the trial court, Monica has waived these issues on appeal. *See* TEX. R.APP. P. 33.1.

## B. Bobby's Separate Property Debt

Monica contends that the trial court erred in refusing to reimburse the community for the payment of Bobby's separate property judgment debt in the amount of $8,139.84. In her pleadings, Monica sought reimbursement to the community for funds expended by the community estate for the payment of unsecured liabilities of Bobby's separate estate. *See Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex. 1982) (noting party claiming right of reimbursement must plead and prove expenditures were made and are reimbursable).

■ A party may bring a claim for reimbursement of payments by one marital estate to satisfy unsecured liabilities of another marital estate. TEX. FAM.CODE ANN. § 3.408(b)(1) (Vernon 2007). "The right of reimbursement is not an interest in property or an enforceable debt, per se,

but an equitable right which arises upon dissolution of the marriage...." *Vallone*, 644 S.W.2d at 458–59. "[T]he payment by one marital estate of the debt of another creates a prima facie right of reimbursement." *Penick v. Penick*, 783 S.W.2d 194, 196 (Tex.1988).

At trial, Bobby testified that he took out a loan against his truck to pay off his separate property judgment debt.[8] He admitted that although Monica had not contributed to the debt, he used community property funds to extinguish it. In the decree and its findings and conclusions, the court characterized the truck as part of the community estate subject to division but made no mention of the community funds used to pay off the debt.

■ The undisputed evidence shows that Bobby's separate property judgment was paid by community property funds. We therefore conclude that the trial court's refusal to reimburse the community for one-half of the community funds used to pay Bobby's separate property judgment debt was unsupported by the evidence and an abuse of discretion. *See Zieba v. Martin*, 928 S.W.2d 782, 790 (Tex. App.-Houston [14th Dist.] 1996, no pet.).

## C. Payments to Ex–Wife

■ Monica asserts that the trial court erred in failing to reimburse the community estate for the community funds Bobby used to pay his ex-wife.

■ A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse. *Zieba*, 928 S.W.2d at 789. The breach of a legal or equitable duty which violates this fiduciary relationship existing between spouses is referred to as "fraud on the community," a judicially created concept based on the theory of constructive fraud.

*Id.* Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud because such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage. *Id.*

■ A presumption of constructive fraud arises where one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *Id.; Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex.App.-Dallas 1985, no writ). In that circumstance, the burden of proof to show fairness in disposing of community assets is upon the disposing spouse. *See Zieba*, 928 S.W.2d at 789; *Morrison v. Morrison*, 713 S.W.2d 377, 379 (Tex.App.-Dallas 1986, writ dism'd). In considering a claim of constructive fraud, the court may consider three factors: (1) the size of the gift in relation to the total size of the community estate; (2) the adequacy of the remaining estate; and (3) the relationship of the donor to the donee. *Zieba*, 928 S.W.2d at 789.

Monica testified that, in May 1996, she discovered that Bobby had been paying his ex-wife $500 a month for approximately eighteen months. She further testified that Bobby's checkbook reflected that he had made the last payment in July 1995. Bobby testified that Monica knew about the payments to his ex-wife when they first began dating, but admitted later telling her that he had stopped the payments. He further admitted that he paid his ex-wife longer than required to do so by the court so that he could help her finish college and obtain a degree. There is no mention of these payments in the final

---

8. Bobby incurred the debt due to repossession of a mobile home.

decree or in the court's findings of fact and conclusions of law.

The trial court found that the parties had entered into an informal marriage on July 10, 1994. Monica presented uncontroverted evidence that Bobby paid his ex-wife $500 a month until July 1995. There is no evidence to suggest, nor does Bobby contend, that he used separate property funds to pay his ex-wife and, thus, we presume that community funds were used. *See Smith v. Smith*, 22 S.W.3d 140, 144 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (noting that to overcome community property presumption, spouse claiming certain property as separate property must trace and clearly identify property claimed to be separate). Although Bobby testified that Monica knew about the payments when they first started dating, there is no evidence that Monica consented to the payments after they became common law married. *See Zieba*, 928 S.W.2d at 790 (finding trial court abused its discretion in refusing to reimburse community for husband's $100,000 cash withdrawal from bank account where there was no evidence wife consented to withdrawal although wife testified she knew about withdrawal and did not question husband about it). Moreover, Bobby admitted having deceived Monica about the payments and testified that he continued to pay his ex-wife longer than ordered to do so by the court. *Cf. Zieba*, 928 S.W.2d at 790 (finding no fault with trial court's refusal to reimburse community for funds spent by husband on obligations arising from prior marriage because obligations were imposed on husband by court order). When asked why he continued to pay his ex-wife during his marriage to Monica, Bobby testified that his ex-wife was not receiving

help from anyone else and he wanted to help her obtain her degree. We conclude that the trial court should have reimbursed the community for the payments to Bobby's ex-wife made between July 1994 and July 1995, and awarded Monica's community assets one-half of the value. Its refusal to do so was an abuse of discretion. *See id.*[9]

### D. Talton Property Mortgage

Monica also complains that the trial court failed to factor in the $65,000 home equity loan in its valuation of the Talton property. She argues that this debt was a community debt and should have been considered by the court when it valued the asset.

In 1995, the couple purchased the Talton property, the title to which was taken only in Bobby's name. In November 1999, Bobby deeded 100% of his interest in the property to Monica via special warranty deed. In 2006, Monica borrowed $65,000 and granted a home equity lien against the Talton property to secure the loan. In the final decree, the court confirmed the Talton property as Monica's separate property and awarded it to her "subject to and with the assumption of the mortgage in the original principal amount of $65,000...." In its findings, the court found that Bobby had gifted the Talton property to Monica during the marriage and valued it at $72,383.00. In its conclusions, the court stated that the Talton property was part of Monica's separate estate.

■■■ Bobby argues that the evidence supports the court's finding that the $65,000 loan was Monica's separate property debt. We agree. The special warranty deed, the parties' testimony that Bobby deeded all of his interest in the property to Monica, the promissory note

**9.** This calculation is based on the court's finding that the parties became informally married in July 1994 and the uncontroverted evidence that Bobby made monthly payments of $500 to his ex-wife until July 1995.

for $65,000 reflecting Monica as the sole borrower, and the homestead lien contract and deed of trust bearing Monica's name as "owner" of the Talton property constitute substantive and probative evidence to support the court's finding that the Talton property was Monica's separate property. We also note that Monica testified that the Talton property was her separate property. *See Love v. Bailey–Love*, 217 S.W.3d 33, 35 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (concluding that obligation to pay student loans constituted spouse's separate debt and trial court erred in assigning repayment obligation to non-incurring spouse).[10]

■ However, although the trial court properly characterized the $65,000 loan as Monica's separate property debt, it erred in failing to factor in the debt in its valuation of the Talton property. Instead, in its findings, the court valued the Talton property at $72,383.00 without considering the outstanding $65,000 loan. When the loan is taken into account, the value of Monica's separate estate is reduced by two-thirds. The erroneous valuation of Monica's separate estate would presumably impact the trial court's determination of a just and equitable division of the community estate. *See Murff*, 615 S.W.2d at 699 (stating that trial court may consider many factors in deciding the estates of the parties, including the size of their separate estates); *Padon v. Padon*, 670 S.W.2d 354, 359 (Tex. App.-San Antonio 1984, no writ) (holding that trial court may consider a spouse's separate property when dividing the spouses' estates).

■ In summary, we conclude that the trial court abused its discretion in refusing to reimburse the community estate for (1) one-half of the community funds used to extinguish Bobby's separate property judgment debt, and (2) one-half of the community payments to Bobby's ex-wife. We also find that the court erred in failing to factor in the outstanding $65,000 loan in its valuation of the Talton property. Given the court's errors on Monica's reimbursement claims and in its valuation of her separate estate, we find that the trial court could not properly exercise its discretion in making a just and right division of the community estate. This is particularly true in light of the undisputed evidence of Bobby's fault in the break-up of the marriage and the fact that the court granted the divorce, in part, on the ground of Bobby's mental cruelty. Issue one is sustained.

## V. CONCLUSION

Accordingly, we affirm the portion of the trial court's judgment granting the divorce, reverse the portion of the judgment dividing the marital estate, and remand the case for a new trial on the just and right division of the parties' property in accordance with this opinion.

---

**10.** In a related argument, Monica contends that if the $65,000 home equity loan against the Talton property is, in fact, her separate property debt, then the trial court mischaracterized the one-half interest in 9105 Lazydale and 9109 Lazydale—which were purchased with the proceeds of the $65,000 loan—as community property. Having failed to file a request for specified additional or amended findings or conclusions regarding the characterization of the Lazydale properties after the trial court filed its original findings and conclusions, Monica has waived her right to complain about this issue on appeal. *See Smith*, 22 S.W.3d at 149; *see also Operation Rescue–Nat'l v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 937 S.W.2d 60, 82 (Tex. App.-Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546 (Tex.1998) (concluding that by failing to request additional findings, appellants waived right to complain about omitted or incorrect findings).