**Affirmed and Memorandum Opinion filed October 4, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-10-01081-CV

### STELLA NEAL, Appellant

### V.

### SAMMIE L. NEAL, Appellee

**On Appeal from the County Court at Law No. 3**
**Galveston County, Texas**
**Trial Court Cause No. CV-0061628**

## M E M O R A N D U M   O P I N I O N

Appellant Stella Neal appeals a judgment in favor of appellee Sammie L. Neal, contending that the trial court erred by not ruling in Stella's favor on her fraud on the community claim. We affirm.

### Background

Stella's husband, Melvin Neal, died in March 2009. Melvin's mother, Sammie, sued her daughter-in-law, Stella, on July 8, 2009 in the Justice Court Precinct 4 of Galveston County. Sammie alleged in her original petition that (1) Sammie owns a

"1971 Chevy Pickup Truck" and a "1988 Cadillac;" (2) Sammie lent the two vehicles to her son Melvin "for his use while he needed them;" and (3) since Melvin's death, Sammie "has demanded possession of the vehicles," but Stella "refused to deliver the possession of the vehicles" to her. Sammie asked the trial court to issue a writ of possession and order Stella to pay attorney's fees. Stella filed a general denial.

The justice court held a hearing on September 22, 2009. The court entered judgment in favor of Sammie determining that she is the owner of the Chevy truck and the Cadillac, and ordering Stella to deliver the two vehicles to Sammie. The court further ordered Stella to pay Sammie $1,500 in attorney's fees.

Stella filed a de novo appeal in the County Court at Law Number 3 in Galveston County; she filed an Original Cross Petition alleging a claim for fraud on the community with regard to the Cadillac on July 12, 2010. Sammie filed an answer on July 26, 2010, generally denying Stella's allegations and claiming that Stella's claim was barred by the statute of limitations. The county court held a bench trial on July 26, 2010.

At trial, Stella testified that the Cadillac at issue in this case[1] is in her possession and belongs to her. Stella testified that she and Melvin bought the Cadillac in October 1987; they made a $6,000 down payment and about $5,000 in payments on the Cadillac. Except for the $6,000 check for the down payment, Stella had no documentation showing that any payments had been made on the Cadillac besides the down payment.

Stella testified that the Cadillac "has not been out of [Melvin's] possession" since 1987, and that Sammie drove the Cadillac only once for a day or two a few years ago. Stella also testified that she did not know Melvin had transferred title to the Cadillac to Sammie in July 1988; Stella stated she found out about the transfer of title only after Melvin's death, when Sammie sued her for possession of the Cadillac. The title to the Cadillac admitted into evidence shows that Melvin transferred title to the Cadillac to

---

[1] Stella stated in her brief on appeal that "[o]f the two vehicles involved in the trial below, Appellant's complaint concerns only the Cadillac and not the pickup truck." Therefore, we will include only facts that concern the Cadillac in the background.

Sammie on September 22, 1988, and that First Republic Bank was a lien holder.

Sammie testified that she bought the Cadillac in July 1988 "from David Taylor through [her] bank." She testified that the dealership sent a salesman to her house with the Cadillac, and she bought the Cadillac at that time. Sammie testified that she did not know the title to the Cadillac was in Melvin's name, or that the Cadillac belonged to Melvin. She also testified that Melvin did not give her the Cadillac and that she did not buy the Cadillac from him but from the dealership.

Sammie stated that she made a $5,000 down payment on the Cadillac and then paid another $19,000 to retire the debt. A First Republic Bank promissory note, dated July 13, 1988, was admitted into evidence and reflects a loan amount of $19,000. A letter from the bank admitted into evidence showed that Sammie paid all sums due on October 7, 1991.

Sammie testified that she drove the Cadillac for several years and then lent it to Melvin "off and on;" she stated that Melvin could borrow the Cadillac any time, but that it was kept at Sammie's house. Since she bought the car, she has paid for the Cadillac's registration, inspection, and insurance. When Melvin died, Sammie asked for the Cadillac to be returned, but Stella refused to return the car. When Stella's attorney asked Sammie, "Wasn't that [Cadillac] really a gift from you to [Melvin]?," Sammie denied giving Melvin the Cadillac as a gift.

Stella's neighbor, Clarice Farris, testified that she was familiar with a black Cadillac Melvin and Stella had bought in 1987. Clarice testified that she remembers seeing the Cadillac from time to time and she never thought the Cadillac did not belong to Melvin and Stella.

Stella's daughter, Melvinette S. Gipson, testified that she was in middle school at the time the Cadillac was bought. Melvinette did not remember the Cadillac ever being kept at Sammie's house. She testified that the Cadillac was kept in her parents' garage. According to Melvinette, no one ever said that the Cadillac was owned by her

grandmother Sammie.

After hearing the evidence presented, the trial court found that the Cadillac belongs to Sammie and ordered the car delivered to Sammie's address within ten days. The trial court signed a judgment in accordance with its pronouncement at trial on August 3, 2010. Neither party requested findings of fact or conclusions of law. Stella timely filed an appeal.

## Analysis

In her sole issue on appeal, Stella argues that the trial court erred by not finding in her favor on her fraud on the community claim.

Stella and Sammie did not request findings of fact or conclusions of law pursuant to Texas Rule of Civil Procedure 296, and the trial court filed none. When no findings of fact or conclusions of law are filed or properly requested in a bench trial, it is implied that the trial court made all necessary findings to support its judgment. *Mays v. Pierce*, 203 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We must affirm the trial court's judgment on any legal theory that finds support in the evidence. *Treadway v. Shanks*, 110 S.W.3d 1, 5 (Tex. App.—Dallas 2000), *aff'd*, 110 S.W.3d 444 (Tex. 2003). A party's failure to request findings of fact or conclusions of law does not waive his right to challenge the legal and factual sufficiency of the evidence on appeal. *See Pruet v. Coastal States Trading, Inc.*, 715 S.W.2d 702, 704 (Tex. App.—Houston [1st Dist.] 1986, no writ); Tex. R. App. P. 33.1(d).

When conducting a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id*. at 822. We sustain a legal insufficiency challenge only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the

4

only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810; *Niche Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 569 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse. *Knight v. Knight*, 301 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "The breach of a legal or equitable duty which violates this fiduciary relationship existing between spouses is referred to as 'fraud on the community,' a judicially created concept based on the theory of constructive fraud." *Id.* Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud. *Id.* Such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage. *Id.*

A presumption of constructive fraud arises when a spouse unfairly disposes of the other spouse's interest in community property. *Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The burden is upon the disposing spouse or his donee to prove the fairness of a disposition of the other spouse's one-half community property. *Id.* In considering a claim of constructive fraud, the court may consider three factors: (1) the size of the gift in relation to the total size of the community estate; (2) the adequacy of the remaining estate; and (3) the relationship of the donor to the donee. *Knight*, 301 S.W.3d at 731.

On appeal, Stella contends the record conclusively establishes that Melvin committed fraud on the community estate because he gave Sammie the Cadillac as a gift.

The title to the Cadillac admitted into evidence shows that Melvin transferred title to the Cadillac to Sammie on September 22, 1988. However, Sammie testified that Melvin did not give her the Cadillac. She also testified that she did not buy the Cadillac from Melvin but that she bought it from the David Taylor dealership through her bank in July 1988. Sammie stated that she did not know the title to the Cadillac was in Melvin's

5

name or that the Cadillac belonged to Melvin. Sammie further testified that she made a $5,000 down payment on the Cadillac and then paid another $19,000 to pay the car off. A letter from the bank showed that Sammie paid off the loan for the Cadillac on October 7, 1991.

Based on the record before us, we conclude there is some evidence to support a finding that Sammie purchased the Cadillac, and it was not a gift from Melvin. Therefore, we find no error in the trial court's ruling that Sammie did not commit fraud on the community. Accordingly, we overrule Stella's issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


/s/  William J. Boyce
    Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Boyce.