**Affirmed and Memorandum Opinion filed April 9, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00444-CV

## IN THE MATTER OF THE MARRIAGE OF MARI LOU GARCIA AND RENE GARCIA

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 76162-F**

## M E M O R A N D U M   O P I N I O N

Appellant Rene Garcia appeals the trial court's Final Decree of Divorce signed following a bench trial. Rene argues in his first, third, and fourth issues that the trial court abused its discretion when it divided the marital estate because legally and factually insufficient evidence supports the trial court's division, and also because its decision to award specific property items to appellee Mari Lou Garcia, while assigning various debts to him, resulted in a property division so disproportionate that it was manifestly unjust and unfair. We overrule Rene's first

issue because there was evidence that (1) Rene's refusal to cooperate with Mari Lou resulted in the foreclosure of a building owned by the community estate causing the loss of $40,000 in equity; and (2) Rene misused an insurance payment meant to pay for repairs to the former couple's home. We overrule Rene's third and fourth issues because the record contains some evidence of a probative and substantive character supporting the trial court's property division; therefore, it was not manifestly unjust and unfair. Rene contends in his second issue that legally and factually insufficient evidence supports the trial court's finding that Rene was guilty of cruel treatment of Mari Lou. We overrule this issue because there is more than a scintilla of evidence that Rene engaged in cruel treatment of Mari Lou throughout the marriage. We therefore affirm the trial court's decree.

## BACKGROUND

Rene and Mari Lou were married in 1974. They separated in 2013 and Mari Lou filed for divorce in 2014. The case went to trial before an associate judge in 2015. The associate judge's report was rendered on July 10, 2015 and signed on July 13, 2015. A final decree of divorce was eventually signed on November 4, 2015. Mari Lou filed a motion for new trial, which the trial court granted in its entirety.[1]

Rene and Mari Lou owned an undivided tract of land during their marriage. The couple lived in a trailer home on the property and Rene ran his electrician business there as well. The property also contained a barn, where the couple stored

---

[1] The order, in pertinent part, reads: "The Final Decree of Divorce heretofor signed and entered on July 13, 2015, is hereby ORDERED set aside, and the clerk of the court is instructed to return this cause to the active docket for a trial on the merits." When a trial court grants a motion for new trial, the case is reinstated on the trial court's docket and will proceed to trial as though no trial had been previously conducted. *See Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005) ("[W]hen the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over.").

heavy equipment they owned. Rene used this equipment in his electrician business. The associate judge's 2015 property division awarded this real property to Rene. Following the second trial, Rene and Mari Lou's residential homestead was partitioned into two tracts, Tract A and Tract B. Tract A includes the trailer home, while Tract B holds the barn. The property division at issue in this appeal awarded Tract A to Rene and Tract B to Mari Lou.

Rene and Mari Lou also owned a commercial building, known as the Velasco Property, in Angleton, Texas. Mari Lou began using the Velasco Property for her own business, Nutritional Melt Away Place, and she had exclusive control of the building beginning in March, 2014. The loan on the Velasco Property matured in February, 2015. Eric Ashenfelder, the vice president of the bank holding the note on the Velasco Property, agreed to renew the loan in January, 2015. Ashenfelder worked primarily with Mari Lou to obtain the renewal. While he worked mostly with Mari Lou, Ashenfelder testified during the second trial that he did ask Rene, on multiple occasions, about signing a deed so that Mari Lou could obtain refinancing. According to Ashenfelder, Rene always deferred signing an agreement by stating that he had to consult with his attorney first. Without Rene's cooperation, Mari Lou was unable to renew the loan.

The Velasco Property was in foreclosure at the time of the first trial. The associate judge's rendition following the first trial ordered Rene and Mari Lou to sell the Velasco Property "and split the net sales proceeds 50/50 or split the liability 50/50." Mari Lou had previously told Ashenfelder that she had a buyer who agreed to buy the property out of foreclosure. Ashenfelder agreed to the sale of the property to that buyer, Joyce Holloway, a friend of Mari Lou. Holloway agreed to purchase the Velasco Property for $285,000. Holloway met with Ashenfelder and told him that she would buy the Velasco Property if Rene would

3

sign the deed enabling the sale. According to Holloway, Ashenfelder agreed to the sale as long as Holloway would pay the full amount owed to the bank on the note. Holloway testified that the Garcias had between $35,000 to $40,000 equity in the property. Rene refused to sign a deed to facilitate the sale and the deal fell through. The Velasco Property was foreclosed and was sold sometime before the case went to trial the second time in March, 2017. According to Mari Lou, if Rene had just cooperated and signed the deed, either to renew the mortgage or to sell the property, the property would not have been lost through foreclosure. The Garcias lost the equity they had in the property.

Following the first trial, the associate judge ordered Mari Lou to tender to Rene an insurance check totaling approximately $11,400. The couple had originally received the check to pay for covered storm damage to the trailer home. The associate judge ordered Rene to use the check to repair the trailer home. Rene, who denied he was under any obligation to use the insurance check to pay for repairs to the trailer home, used the money to either pay (1) the remaining balance on the trailer home's mortgage; or (2) expenses associated with his electrician business. The trailer home had still not been repaired by the time of the second trial.

During the second trial, Mari Lou asked the trial court to reconstitute the community property in the amount of the insurance check, alleging that Rene had misused the insurance funds to pay a debt that Rene was already obligated to service during the pendency of the divorce proceedings because he was in possession of the property. William Coleman, a certified real estate appraiser, was retained to appraise the value of the Garcias' homestead property. Coleman opined that the value of the undivided Garcia homestead was $122,000. Coleman took the uncompleted repairs into account in his valuation opinion as additional physical

4

depreciation. Coleman further opined that if the money had been used to repair the trailer home, the property would have had a higher appraised value, but the increase would not equal the amount of the insurance check.

Rene operates an electrician business, known as Electrical Services by RG, Inc. Rene operated the business out of the homestead property. Over time, Electrical Services by RG built up a substantial debt, totaling approximately $533,671. The Garcias, not Electrical Services by RG, owned several pieces of heavy equipment Rene used in his business. This equipment included a Bobcat trackhoe, a John Deere tractor with loader and box blade, and three scissor lifts. The couple also owned a John Deere lawnmower and a pleasure boat. Rene used some of the heavy equipment as collateral on several loans that he took out to provide working capital for his electrician business. Mari Lou's sister, Gracie Egan, loaned the Garcias $10,000 in 2011. The loan proceeds were used to pay bills and/or payroll expenses for Rene's electrician business.

The case went to trial a second time, this time before the district court judge. During the second trial, Mari Lou and her mother both testified that Rene had verbally abused Mari Lou throughout the marriage. Rene did not deny using coarse language to describe his wife, but he asserted that it had been more than 35 to 40 years in the past, soon after he returned from Vietnam. When asked during the second trial if it was time for him and his wife to get divorced, Rene responded that it has "been time, 40 years."

Mari Lou also testified about her efforts to take possession of various items of property that had been previously transferred to her. According to Mari Lou, she was advised that her property was ready to be picked up. When Mari Lou travelled to her former home, she found all of the property sitting outside by the road. The property, which included furniture, mattresses, bedding, and other items,

5

was not covered. Some of it was damaged, much of it was muddy. Mari Lou assumed Rene had placed the items outside because he was the person who previously had possession. Mari Lou had no explanation for why Rene placed the items outside.

Rene was asked about why the property had been moved outside. According to Rene, he was told to "have it ready for her, and I had it ready for her, and I put it out for her." When asked if there had been an emergency that had required him to move the property outside, Rene responded "I was told that she had to have it at a certain time. So, I called my secretary, the guy that works for me, told him to tell her that I'll have it ready for her at this time, to come pick it up now. The communication broke up in that area. I thought it was done. So, I went ahead and took it out there. My brother and I had done it." When asked why he had not just let Mari Lou pick the items up from inside the trailer home, Rene agreed that he did not want her inside his house anymore.

During the second trial, Mari Lou asked the trial court to do several things. First, Mari Lou alleged that Rene had caused the Velasco Property to be foreclosed by obstructing the renewal of the mortgage, and later, the sale to Joyce Holloway. Mari Lou asked the trial court to reconstitute the community estate to account for the alleged waste of that community asset. Second, Mari Lou asked the trial court to reconstitute the community estate to account for the insurance check that Rene used for purposes other than completing repairs. Third, Mari Lou asked the trial court to award her the Bobcat trackhoe, John Deere tractor, one of the scissor lifts, as well as the pleasure boat, which she could sell to pay her legal fees. Fourth, Mari Lou alleged that Rene was guilty of cruel treatment and asked the trial court to grant the divorce on that ground. Finally, Mari Lou requested that the trial court award Rene the debt owed to her sister as well as all debt that had been incurred on

the equipment. The trial court granted all of Mari Lou's requested relief. The trial court awarded Rene his electrician business, including all of its debt. During its pronouncement in open court of the property division, the trial court told the parties:

> Moving to Page 9, I re-totalled the numbers. 154,873 to husband. 128,165 to wife. Attorney's fees, the – each will pay their own attorney's fees. And even though I found fault grounds and it does look like the – more of the property was awarded to Mr. Garcia than Mrs. Garcia, Mr. Garcia is ordered to pay all of the debts associated with the items that he signed loans on for himself or for the corporation; and that will probably more than equal out the division. Specifically, that includes any notes where he had placed equipment up as collateral.

The trial court eventually signed a final divorce degree. Neither party asked the trial court to sign findings of fact and conclusions of law. This appeal followed.

## ANALYSIS

I. **The trial court did not abuse its discretion when it divided the marital estate.**

A. **Standard of review**

We review a trial court's division of community property for an abuse of discretion. *Knight v. Knight*, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)). The test for an abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *Id.* A trial court's division need not be equal and may take into consideration many factors, such as the spouses' capacities and abilities, benefits that the party not at fault would have derived from a continuation of the marriage,

7

business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity in age, size of separate estates, the nature of the property, disparity in income and earning capacity, fault in the breakup in the marriage, and a spouse's dissipation or wasting of community assets in the estate. *Id.*; *see Nowzaradan v. Nowzaradan*, No. 01-05-00094-CV, 2007 WL 441709, at *6 (Tex. App.—Houston [1st Dist.] Feb. 8, 2007, no pet.) (mem. op.) (providing non-exclusive list of factors trial court may consider when dividing community estate).

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the division. *Knight*, 301 S.W.3d at 728. Because a trial court's discretion is not unlimited, there must be some reasonable basis for an unequal division of the property. *Id.* Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error; instead, they are considered in assessing whether an abuse of discretion has occurred. *Id.* In other words, Rene must not only show that there is insufficient evidence to support the trial court's waste finding, but also that the erroneous finding caused the trial court to abuse its discretion in the overall division of the community estate. *See Wheeling v. Wheeling*, 546 S.W.3d 216, 224 (Tex. App.—El Paso 2017, no pet.) ("Accordingly, we must also determine whether the errors of which Wife complains of on appeal, if established, caused the trial court to abuse its discretion."); *Matter of Marriage of McCoy & Els*, 488 S.W.3d 430, 433 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("We make a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) Did the trial court err in its application of discretion?" (internal quotation marks omitted)).

8

When, as here, the trial court does not sign findings of fact, we presume the trial court made all necessary findings to support its judgment if those findings are supported by the evidence. *McCoy*, 488 S.W.3d at 433–34. When evaluating the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* With respect to factual sufficiency, we examine the entire record and set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Id.*

### B. The trial court did not abuse its discretion when it impliedly found that Rene dissipated community assets.

In his first issue, Rene argues that the trial court abused its discretion when it divided the community estate based, in part, on a reconstituted estate valued at $29,690,[2] because there is no evidence, or factually insufficient evidence, of actual or constructive fraud. According to Rene, for a trial court to reconstitute a community estate, there must be evidence of constructive fraud. He then argues that constructive fraud is based on the "fiduciary duty which exists between spouses as to the community property which they control." Rene then asserts that there was no longer a fiduciary duty between Mari Lou and himself because, in his view, the associate judge had granted the first divorce before the events relevant to the reconstituted estate had occurred, and, as a result, there could be no constructive fraud. Rene then argues that even if we determine the fiduciary

---

[2] This total is based on the loss of $40,000 equity when the Velasco Property was sold in foreclosure because of Rene's refusal to cooperate, divided in half between Rene and Mari Lou, with only Rene's $20,000 added to the property distribution equation. The remaining $9,690 was calculated by the trial court adding 85% of the $11,400 insurance check to the value of Tract A, Rene's portion of the divided homestead property.

relationship still existed, the evidence was factually insufficient to support the trial court's reconstitution of the community estate.

We conclude Rene's constructive fraud argument is unpersuasive for two reasons. First, the trial court granted Mari Lou's motion for new trial, which set aside the divorce granted by the associate judge and required Rene and Mari Lou to start the divorce process over. *See Wilkins*, 160 S.W.3d at 563. Because the first divorce had been set aside by the trial court granting Mari Lou's motion for new trial, a fiduciary duty continued to exist between Rene and Mari Lou.[3] Second, constructive fraud is not the only basis a trial court may use to support reconstitution of a community estate. A trial court may also consider a spouse's dissipation of the community estate and any misuse of community property. *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Here, there was legally and factually sufficient evidence that Rene did both. The evidence was abundant that Rene refused to cooperate in Mari Lou's efforts to renew the mortgage on the Velasco Property despite repeated attempts by the banker, Ashenfelder, to have Rene sign the necessary documents right up to the time the property was foreclosed. Additionally, the evidence was undisputed that Rene chose not to use the insurance proceeds to repair the storm damage to the trailer home. The evidence was disputed on how Rene actually used the insurance proceeds. Rene testified that he used the money to pay off the trailer home's mortgage, while Mari Lou testified that she subsequently learned that he

---

[3] Rene, citing two opinions from the Fort Worth Court of Appeals, also argues that he did not owe Mari Lou a fiduciary duty because the divorce was contested. *See Parker v. Parker*, 897 S.W.2d 918, 924 (Tex. App.—Fort Worth 1995, writ denied); *Bass v. Bass*, 790 S.W.2d 113, 119 (Tex. App.—Fort Worth 1990, no writ). We conclude that neither case demonstrates the trial court abused its discretion because they are factually distinguishable. Both cases stand for the proposition that parties in negotiation of a marital settlement, who are each represented by counsel and have independent financial advisers, do not owe each other a fiduciary duty. Because there is no evidence that Rene and Mari Lou engaged in settlement negotiations at any time during the divorce proceedings, neither case controls the outcome here.

had used it to pay expenses incurred in his electrician business. The trial court, as the trier of fact, could have reasonably believed Mari Lou's testimony and disbelieved Rene's. Based on the record evidence, summarized above, the trial court could have reasonably determined that, in both instances, Rene's actions, or inactions, resulted in a reduction in the value of the community estate justifying a reconstitution of the community estate in the amount of the loss, $29,960. *See In re Marriage of Slagle*, No. 14-16-00113-CV, 2018 WL 2306736, at \*6 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. denied) (mem. op.) (rejecting husband's argument trial court abused discretion when it divided community estate because trial court could have disbelieved husband's self-serving testimony and believed wife's testimony instead); *Nowzaradan*, 2007 WL 441709, at \*7 ("The trial court may also take into consideration that a spouse unfairly depleted or dissipated community assets and may, as here, award the aggrieved party a judgment for the value of those assets as a means of equalizing the community estate."). We overrule Rene's first issue.

## C. Because the record contains some evidence of a probative and substantive character supporting the trial court's property division, it was not manifestly unjust and unfair.

Rene argues in his third issue that the trial court abused its discretion when it divided Rene and Mari Lou's community estate because it assigned certain pieces of heavy equipment to Mari Lou while assigning the secured debt related to that heavy equipment, as well as other debts, to him. Rene then contends in his fourth issue that the trial court's property division was so disproportionate that it was manifestly unjust and unfair, and therefore constitutes an abuse of the trial court's discretion. We address each contention in turn.

The trial court awarded Mari Lou three pieces of heavy equipment owned by the couple: the trackhoe, the tractor, and one of the three scissor lifts. Rene argues

11

this was an abuse of discretion by the trial court because he needs the equipment to profitably run his electrician business, while Mari Lou planned only to sell the equipment to pay her attorney's fees. Rene goes on to argue that it was also an abuse of the trial court's discretion to award the debt secured by those pieces of equipment to him rather than Mari Lou. According to Rene, this is especially true because Mari Lou stipulated that if she was awarded the equipment, she was willing to pay the secured debt attached to those items. Finally, Rene argues that the trial court abused its discretion when it assigned responsibility to pay a credit card debt, and the $10,000 loan from Mari Lou's sister, to him.

We turn first to Rene's stipulation contention. We do not agree that Mari Lou made such a stipulation. She instead testified that she was willing to take on the secured debt associated with certain pieces of heavy equipment, if the trial court decided, as part of its division of the community estate, to assign both the equipment and the debt to her. This simply does not rise to the level of a stipulation or judicial admission. *See Fitzgerald v. Cadle Co.*, No. 12-16-00338-CV, 2017 WL 4675513, at *2 (Tex. App.—Tyler Oct. 18, 2017, no pet.) (mem. op.) (defining a stipulation as "an agreement, admission, or concession made in the course of judicial proceeding by parties or their attorneys and may be used to fix, limit, or modify the issues to be tried" and they "enjoy equal dignity with judicial admissions").

Turning to Rene's contention regarding the three pieces of heavy equipment, we conclude that the trial court did not abuse its discretion when it awarded them to Mari Lou. First, the evidence was undisputed that the equipment was part of the community estate and was not owned by Electrical Services By RG. Second, the trial court, as the trier of fact, could have reasonably disbelieved Rene's testimony that it was impossible to profitably run his electrician business without the three

pieces of equipment, and instead believed that Rene could rent any equipment he needed to complete a job and still make a profit, or that Rene meant what he said when he testified during the second trial that he was retiring. We reach the same conclusion regarding the secured debt, the credit card debt, and the loan from Mari Lou's sister. The evidence was undisputed that all of the borrowed funds were used to finance Rene's electrician business. As a result, the trial court did not abuse its discretion when, as part of the right and just division of the community estate, he assigned them to Rene. *See Knight*, 301 S.W.3d at 728.

Turning to Rene's fourth issue, he contends that the trial court's property division was so disproportionate that it is manifestly unjust and unfair. Rene then challenges what he perceived as the trial court's weighing of the various *Murff* factors. *See Murff*, 615 S.W.2d at 699. Rene, however, overlooks the fact that *Murff*, and subsequent cases, established a non-exclusive list of factors that a trial court may consider when dividing a marital estate. *See Ahmad v. Ahmad*, No. 02-13-00038-CV, 2014 WL 3536542, at *2 (Tex. App.—Fort Worth July 17, 2014, no pet.) (mem. op.). Here, we presume the trial court weighed those factors it considered significant, including the disparity between Rene and Mari Lou's earning capacities, the nature of the property being divided, their financial obligations, fault in the break-up of the marriage, as well as dissipation and misuse of community assets by either spouse. *See McCoy*, 488 S.W.3d at 433–34 ("[W]e presume the trial court made all necessary findings to support its judgment if those findings are supported by the evidence."). Finally, Rene begins his argument here with the premise that the trial court assigned a greater amount of the community's assets to Mari Lou. Rene reaches this conclusion by entirely deleting the $29,960 reconstituted estate from his calculation. We have already rejected Rene's challenge to the trial court's decision to reconstitute a part of the community estate.

13

Therefore, when the $29,960 is factored into the equation, Rene received a significantly larger amount than Mari Lou.[4] The trial court then balanced the amounts by assigning the various debts mentioned above to Rene. We cannot say that the trial court's division of the community estate in such a manner was so disproportionate that it is manifestly unjust and unfair. *See In re Marriage of Slagle*, 2018 WL 2306736, at *6 (rejecting former husband's argument trial court abused discretion when it divided marital estate based in part on trial court's division of responsibility for payment of community debts). We overrule Rene's fourth issue.

## II. Legally and factually sufficient evidence supports the trial court's cruelty finding.

Rene argues in his second issue that the trial court erred when it granted the divorce "upon the fault ground of cruelty." In Rene's view, there is legally and factually insufficient evidence supporting the trial court's cruelty finding. We disagree.

A court may grant a divorce on the ground of cruel treatment. Tex. Fam. Code Ann. § 6.002. To be considered cruel treatment, the conduct of the accused spouse must rise to such a level that it renders the couple's living together insupportable. *Id.* Insupportable for purposes of cruel treatment means incapable of being borne, unendurable, insufferable, or intolerable. *Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Henry v. Henry*, 48 S.W.3d 468, 473–74 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). Mere trivial matters or disagreements do not justify the granting of divorce for cruel treatment. *Id.* In addition, acts occurring after separation can support a

---

[4] The trial court announced that Rene was receiving $154,873, while Mari Lou was assigned only $128,165.

finding of cruel treatment. *Id.*

Here, both Mari Lou and her mother testified that Rene verbally abused Mari Lou throughout the marriage, especially when he was drinking. Mari Lou's mother, during her trial testimony, wrote down things that Rene called Mari Lou during the marriage. She wrote "bitch" and "women I am going to hit." Mari Lou testified that Rene called her a "bitch" and "whore." She also testified that Rene's behavior grew to the point where she feared for her life, and that was ultimately why she left. Rene did not deny using abusive language toward Mari Lou, he instead asserted that he did so many years in the past, when he first returned from the Vietnam War. Finally, the trial court heard Rene's explanation for why he put Mari Lou's property outside where it was exposed to the weather and could have reasonably found that Rene did so for no reason other than to be cruel to Mari Lou while the divorce was still pending. *See Ayala*, 387 S.W.3d at 733 ("Acts occurring after separation can support a finding of cruel treatment."). The trial court, as the trier of fact, could have believed Mari Lou and her mother's testimony regarding Rene's abusive behavior and disbelieved Rene's proffered explanation that it only happened long ago. We conclude more than a scintilla of evidence supports the trial court's cruelty finding as a ground for the divorce and as a result, the evidence is legally and factually sufficient. *Id.* We overrule Rene's second issue on appeal.

## CONCLUSION

Having overruled Rene's issues on appeal, we affirm the trial court's decree.


/s/     Jerry Zimmerer
        Justice


Panel consists of Justices Jewell, Zimmerer, and Spain.