**Affirmed and Memorandum Opinion filed July 3, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-01134-CV

---

**JANTE LANGAN, Appellant**

**V.**

**ERIC LANGAN, Appellee**

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 64386**

---

## M E M O R A N D U M   O P I N I O N

The trial court rendered judgment ending Jante Langan and Eric Langan's marriage, dividing community property, and assessing child support. In eleven issues, Jante contends the trial court erred by limiting cross-examination, finding the value of certain stock options, dividing community property, failing to reimburse the community estate, and denying her motion for new trial. We affirm.

## I. BACKGROUND

Eric has been the president and CEO of Rick's Cabaret International, Inc. since 1999. On January 12, 2006, Eric and Jante married. Eric has two children with Jante and three children from previous marriages. Jante is a part-time real estate agent and was attending law school at the time of trial.

Eric filed for divorce several times during the parties' marriage, but the parties had previously reconciled. However, after being arrested following a domestic dispute with Jante, Eric again filed for divorce on August 2, 2011. Eric was eventually charged with certain criminal offenses stemming from the dispute. A court issued temporary orders prohibiting the parties from engaging in certain conduct; Jante presented evidence at trial that Eric violated these orders several times relative to disposition of property. Jante filed a counter-petition, alleging Eric committed fraud and waste on the community estate and seeking reimbursement.

On June 11 through June 13, 2012, the trial court conducted a bench trial on Eric's petition for divorce. On June 13, 2012, the trial court orally pronounced the parties divorced and stated that it was awarding 60% of the net community estate to Jante and 40% to Eric. On September 13, 2012, the trial court signed the divorce decree detailing the property and debt each party is to receive.

Jante timely filed a motion for new trial, requesting a new trial based on purportedly newly discovered evidence regarding changes to Eric's employment agreement, the trial court's alleged abuse of discretion in failing to reimburse the community estate for Eric's payments to his ex-wife, and its failure to award attorney fees to her. Following an evidentiary hearing, the trial court denied Jante's motion for new trial. Jante did not request, nor did the trial court prepare, written findings of fact or conclusions of law. In a nonjury trial, when no findings

2

of fact or conclusions of law are filed or requested, as here, we infer that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

## II. EVIDENTIARY RULINGS

In her first two issues, Jante complains about two of the trial court's evidentiary rulings.

### A. Standard of Review

Determining whether to admit or exclude evidence lies within the trial court's sound discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007. A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for the trial court's judgment. *Id.* We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see also Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012).

### B. Preserving Error

To preserve error in the exclusion of evidence, a party must, among other steps, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible. *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 629–30 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see also* Tex. R. App. P. 33.1(a)(1)(A) (requiring timely request that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific

grounds were apparent from the context.") The reasons presented to the appellate court for review must coincide with the reasons presented to the trial court for admitting or excluding evidence. *Estate of Veale v. Teledyne Industries, Inc.*, 899 S.W.2d 239, 242–43 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

## C.    Analysis

In her first issue, Jante contends the trial court abused its discretion by not allowing her to cross-examine Eric regarding the identity of the limited partner in E.S. Langan L.P. At the outset, it must be noted the parties do not dispute that E.S. Langan L.P. is Eric's separate property. Eric owns 1% of this limited partnership and, in turn, E.S. Langan L.P. owns over 500,000 shares of stock in Rick's Cabaret International, Inc.

Jante inquired how Eric acquired an interest in E.S. Langan L.P. and also asked the name of the limited partner of E.S. Langan L.P. Eric testified that to purchase his interest, he deposited $10,000 into an account and that his partner contributed $990,000. Jante then sought the name of Eric's partner; Eric refused to answer, stating he was barred from disclosing that information. After Jante's counsel asked that the trial court to instruct him to answer and provide the name, the trial court inquired as to the relevancy of the name of the partner as follows:

> *[Trial Court:]  Well, what relevance would who the partner is be?*
>
> [Jante's Counsel:]  Well, there is an issue, Judge, with regard to the amount of interest, whether the interest is 1 percent or 10 percent. And there is also an issue with regard to the transfer of funds into that account during the marriage.
>
> . . .
>
> [Eric's counsel:]  We each said that it was separate property. We have that amount there.
>
> [Jante's Counsel:]  It's not that it's separate property, Judge. There's not a question about that. Part of the -- part of the claims relate to the growth of this separate property estate, and there's been nothing that's

been produced to us that shows there is any prohibition on Mr. Langan disclosing who that partner is.

[Trial Court:] Well, it's a limited partnership by definition. It's not a public partnership.

[Jante's Counsel:] That's correct, Judge. He has not produced the partnership agreement.

. . .

*[Trial Court:] I still don't understand why the name of that partner is relevant.*

[Jante's Counsel:] Judge, part of the basis of the claims on the property is unjust enrichment and an influx of monies and stocks into Mr. Langan's -- into accounts in which he owns an interest that he claims as his separate interest.

[Eric's counsel:] Judge, it's -- unjust enrichment is a reimbursement

[Trial Court:] I understand.

. . .

*[Trial Court:] I still -- right now I sustain the objection.*[1]

Jante now argues that evidence of the identity of the limited partner was critical to her claim for unjust enrichment because, if Eric were the 99% limited partner in E.S. Langan L.P., Jante has a strong claim that he perpetrated a fraud on the community estate by adding debt to it. Further, she contends, if Eric were *not* the limited partner, he would have violated his duties to the limited partner by taking margin loans of over $1 million from the limited partnership, E.S. Langan L.P., that did not benefit it.

We hold that Jante did not preserve error on her first issue because she did not inform the trial court that Eric may be the limited partner. The trial court twice asked Jante's counsel why the identity of the limited partner was relevant. Jante's

---

[1] Technically, Eric's counsel had not objected. Rather, the trial court inquired as to the relevancy of the identity of the limited partner. Jante's counsel did not respond to the satisfaction of the trial court; therefore, the trial court did not allow this question.

counsel broadly responded that the inquiry relates to Eric unjust enrichment of his separate estate but she never explained that, if Eric were the limited partner, Jante may be entitled to greater reimbursement[2] to the community estate because of his fraud.

Additionally, we note that $1.29 million in margin loans, the majority of which the parties agree is community debt and which was awarded to Eric in the property division, was taken from the account containing both community and separate property, not from the account tied to E.S. Langan L.P., and is his separate property. Thus, the identity of the limited partner would not be relevant on the issue of community margin debt. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." Tex. R. Evid. 402. We overrule Jante's first issue.

In her second issue, Jante contends the trial court erred by limiting the scope of her cross-examination of Eric regarding an upcoming meeting of Rick's Cabaret's shareholders.

> [Jante's Counsel:] Okay. Is there a board of directors meeting [of Rick's Cabaret] that is upcoming in the next -- this summer that you're aware of?
> [Eric:] Yes.
> . . .
> [Jante's Counsel:] And when is that planned for?

---

[2] The parties agreed that the community estate had a valid reimbursement claim in the amount of $605,881.42.

6

[Eric:]  June 27th.

. . .

[Jante's Counsel:]  Can you tell me what you understand that the issues are that are going to be presented at that meeting?

*[Eric's Counsel:]  Judge, I'm going to object to the relevancy.*

[Trial Court:]  Where are you going?

[Jante's Counsel:]  Judge, there are 155,000 stock options that are still pending that are community, which aren't listed as having specific value by either side.

[Trial Court:]  All right.  I understand they are.  *What is the relevance of the agenda?*

[Jante's Counsel:]   Well, because presently those options are considered to be -- I would use the term underwater, which is obviously not the official term.

*[Trial Court:]  Can you just ask the question relevant to the stock instead of getting into the whole agenda?*

*[Jante's Counsel:]  Sure.  Sure.*

*[Trial Court:]  Sustained.*

[Jante's Counsel:]  Mr. Langan, the 155,000 options that still exist, can you tell the Court what you believe that they are worth presently?

[Eric:]  $300, maybe.  Nothing because they are below the strike price.

[Jante's Counsel:]  Okay. And how would the -- how could they become valuable?

[Eric:]  If Rick's Cabaret International, Inc., stock price goes above the strike price.

[Jante's Counsel:]  Okay.  And do you have any ability to take action or course of action that would influence that that you're aware of?

[Eric:]  No.  The market values the stock.  I don't.

. . .

[Jante's Counsel:]  Can action by the board and/or the shareholders impact the stock price?

[Eric:]  I can't answer that question --

7

[Jante's Counsel:]  You don't know the answer?

[Eric:]  -- a yes or no.  I mean, can actions -- yes.

Jante argued the trial court's limitation of her cross-examination to the valuation of the stock, and not to the broader issue of what was on the agenda, resulted in a $100,000 windfall to Eric.[3]  She argues here that a topic of the June 27 shareholder's meeting was the amendment to the employee stock option plan—amendments which she posits greatly increased the value of the stock options. Jante contends Eric was well aware that the upcoming meeting would result in an increase in the stock options' value, but that he nevertheless fraudulently testified the options were worth $300 or nothing.

We disagree that the trial court's limitation of Jante's cross-examination resulted in harm.  The trial court specifically permitted Jante's counsel to ask questions about the meeting relating to valuation of the stock options because valuation was relevant.  Jante's counsel agreed she could so limit her cross-examination.  However, after agreeing to the limitation, Jante's counsel asked Eric what he believed the value of the 155,000 stock options was.  Eric testified he valued them at $300.  Jante's counsel did not challenge that testimony and did not offer any proof of any possible valuation she would attach to them.  Nor has Jante shown that the trial court prevented her from asking about possible amendments to the employee stock option plan.

In her appellate brief, and without reference to any evidence, Jante asserts that the strike price of the stock options at the time of trial was $10.25 per share whereas the strike price following the shareholders meeting decreased to $8.35 per share.  Further, and again without any reference to evidence, Jante asserts the

---

[3] Jante testified at the hearing on the motion for new trial that she could place a value on the strike price of the stock options because she was a shareholder.

"stock currently trades around $8 to $9," meaning the value of the 155,000 stock options was not $300 but was around $100,000. Even though Jante now disagrees with Eric's valuation, and even if actions taken at the shareholders meeting (which occurred after the rendition of the judgment) resulted in an increased value of the stock options, there is no showing the trial court abused his discretion in limiting the cross-examination. We overrule Jante's second issue.

## III. VALUATION OF STOCK OPTIONS

In her third issue, Jante contends the trial court erred by using an improper method to calculate the value of the 155,000 stock options in Rick's Cabaret. In her fourth issue, Jante contends the trial court's valuation of the stock options is against the great weight and preponderance of the evidence. In her fifth issue, Jante contends that in determining how to divide stock options, Texas courts should "adopt a pragmatic approach that takes into account the rights of each spouse in the property."

### A. Standard of Review

Under the Texas Family Code, the trial court must divide community property in a "just and right" manner. Tex. Fam. Code § 7.001 (West 2006); *Aduli v. Aduli*, 368 S.W.3d 805, 819 (Tex. App.—Houston [14th Dist.] 2012, no pet.). It is well established that a trial court may exercise wide discretion in ordering a property division. *Aduli*, 368 S.W.3d at 819. The division of property need not be equal, and it is presumed that the trial court properly exercised its discretion in determining the value and division of marital property. *Id.* We review an alleged error in dividing marital property for an abuse of that discretion by a division or an order that is manifestly unjust and unfair. *Id.*; *see also Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Legal and factual sufficiency are relevant factors, rather than independent bases for reversal,

9

in determining whether the trial court abused its discretion. *Aduli*, 368 S.W.3d at 819; *see also London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision. *Barras v. Barras*, 396 S.W.3d 154, 164 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion if it acts unreasonably or arbitrarily, or without reference to any guiding rules or principles. *Id.*

Where no findings of fact or conclusions of law are filed or requested, we infer that the trial court made all findings necessary to support its judgment. *Holt Atherton Indus., Inc.,* 835 S.W.2d at 83. Further, when a complete record is brought forward on appeal, these implied findings may be challenged for legal and factual sufficiency. *Id.* at 84. In a factual sufficiency review, we consider all of the evidence and set aside the order only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Id.* (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

## B.    Analysis

Under the Texas Family Code, the trial court shall determine the rights of divorcing spouses in stock options. Tex. Fam. Code Ann. § 7.003 (West 2006). While she did not do so in the trial court, Jante contends here that there are several different methods for determining how to value stock options during a divorce, including the "intrinsic value method" and the "Black/Scholes method." Jante complains that, instead of using a recognized valuation methodology, the trial court simply accepted as true Eric's unreliable testimony that the stock options were worth $300 or nothing. Among other reasons, Jante asserts Eric's testimony was

10

unreliable because he is not a valuation expert and he obviously defrauded the community estate. She also claims that awarding Eric all of these stock options gave him a "windfall" because of the decisions made at the shareholders' meeting, which took place after the trial.

We reject Jante's arguments. The only evidence regarding the value of these stock options was Eric's testimony that they were worth $300 or nothing and his inventory valuing the options at $300. Although on appeal, Jante attacks Eric's testimony for failing to use an acceptable method of valuation, Jante did not raise this argument in the trial court, nor did she offer any valuation of her own. In fact, the following exchange during trial demonstrates her acquiescence and tacit assent to Eric's valuation:

> [Trial Court:] I'm just going to -- I'm trying to find where those stock options are. They are 155,000?
>
> [Eric's Counsel:] Yes, sir.
>
> [Trial Court:] At $8 a share?
>
> [Eric's Counsel:] No, sir. Total of 300. Those stock options are the ones that [Jante's counsel] was saying we're underwater on. They are actually more than what the stock is right now, the option price.
>
> [Trial Court:] And the stock options only have a 300-dollar value?
>
> [Jante's Counsel:] *Penny stock value. [Emphasis added]*
>
> [Eric's Counsel:] Yes, sir, penny stock value. **We pretty much agree** it's only $300. [Emphasis added]
>
> [Trial Court:] All right.
>
> [Jante's Counsel:] It doesn't mean we don't want them, Judge.

When asked if the value of the stock options was $300, Jante responded that she did not know. Also, although Jante did not assign a value to the stock options, in her inventory, she listed them under the column "to Husband" and she "valued" them at $300.

11

Each party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *Aduli*, 368 S.W.3d at 820. When a party does not provide evidence of value for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property. *Id.*[4] Hence, because Jante provided no evidence of value, she is precluded from complaining that the trial court could not properly divide the community estate, including the stock options, based solely upon the value Eric assigned to the stock options. Additionally, because Jante did not demonstrate how this valuation caused the trial court to abuse its discretion in dividing the overall community estate, we cannot hold that an abuse of discretion occurred. *See Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex. App.—El Paso 2005, no pet.)

Additionally, we need not address what valuation methodology Texas courts should use when dividing stock options owned by the community estate. Eric's testimony was unchallenged, Jante presented no evidence regarding the value of the stock, and she did not take advantage of the trial court's ruling permitting her to cross-examine Eric about stock option issues to be discussed at the upcoming shareholders' meeting. In fact, she conceded they were of "penny stock" value. We overrule Jante's third, fourth, and fifth issues.

---

[4] Jante argues that the absence of evidence regarding property's value "does not absolve the trial court of fulfilling" its duty to provide a just and right division of the property and that a trial court cannot make a just equitable division regarding community property when there is no evidence of the property's value. *Odom v. Odom*, No. 12-06-00218-CV, 2007 WL 677800, at *2 (Tex. App.—Tyler Mar. 7, 2007, no pet.) (mem. op.). In *Odom*, however, neither party offered any evidence as to the value of the community property. Here, Eric offered his own testimony. Although Jante challenges in this court whether such evidence was reliable or factually sufficient to support the trial court's decision, she has not urged a no-evidence challenge.

## IV. DIVISION OF COMMUNITY ESTATE

In her sixth issue, Jante contends certain actions by the trial court deprived her of a "true" 60% share of the community estate. Specifically, Jante complains that the trial court: (1) did not consider the tax consequences, such as capital gains, of awarding her primarily investment stocks; (2) did not divide Cool Planes, L.L.C. between the parties; and (3) assessed the value of a $4,500 Buddha statue against Jante twice—once as her credit card debt and again when it awarded her the statue.

First, Jante offered no evidence of what the tax consequences would be regarding the award of the investment stocks. Further, she did not object to the trial court's division of property on this basis. Additionally, Jante cites no authority supporting her contention that the trial court was required to *sua sponte* determine what Jante's tax burden would be following division of the community property. Thus, Jante has not established that the trial court abused its discretion by awarding her investment property. *See* Tex. R. App. P. 38.1(i) (arguments in appellant's brief must be supported with appropriate citations to authorities and the record); *Kamat v. Prakash*, 420 S.W.3d 890, 905 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that appellant waived issue by failing to cite any relevant authorities).

Second, the trial court did not abuse its discretion by failing to divide Cool Planes L.L.C. ("Cool Planes"). There is no dispute that during their marriage and with community funds, Eric purchased a 1978 Piper Cherokee aircraft. There is also no dispute that prior to trial, Eric apparently transferred ownership of the aircraft to Cool Planes; thus, Jante asserts that Cool Planes is community property subject to division.

In her inventory, Jante listed "1978 Piper Cherokee—Cool Planes L.L.C." She valued it at $39,950 and proposed it be awarded to Eric at that value. Eric's

inventory included "1978 Piper PA 26-161 Cherokee Warrior II Aircraft" with a fair market value of $21,250. He proposed the trial court award it to him. Assuming Cool Planes was a community asset, we hold the trial court's failure to award ownership of Cool Planes was harmless. There was no evidence regarding the value of Cool Planes (independent of the valuation of the aircraft, which both Eric and Jante listed on their respective inventories and which the trial court awarded to Eric), and no testimony as to who owned Cool Planes. Moreover, while Jante asked the trial court to consider Cool Planes in the division of the community estate, she did not ask that the aircraft or Cool Planes be awarded to her. Assuming Jante intended that Cool Planes be considered as part of her reimbursement claim, she had the burden of pleading and proving what expenditures were made with respect to Cool Planes and/or the aircraft, and that they are reimbursable. *See Barras*, 396 S.W.3d at 173–74. Because she did not do so, the trial court did not abuse its discretion.

Third, Eric testified that the Buddha statue was worth $4,500. Jante testified she was willing to "take the Buddha statue at $4,500." When questioned whether he was aware there was a debt on the statue, Eric responded, "No." Eric's response is not evidence that there is a balance still owed on the statue; instead, his response is simply evidence that he does not know whether there is a balance due. It is a witness's answer, not an attorney's question, that is evidentiary. *See Verret v. American Biltrite, Inc.*, No. 02-04-00244-CV, 2006 WL 2507318, at *6 n.5 (Tex. App.—Fort Worth Aug. 31, 2006, pet. denied) (mem. op.). Additionally, Jante never testified there was a debt associated with the statue. We overrule Jante's sixth issue.

14

## V.    REIMBURSEMENT OF THE COMMUNITY ESTATE

In her seventh issue, Jante contends the trial court did not sufficiently reimburse the community estate for Eric's alleged fraud and waste, which she argues inflated the community debt.  In her eighth issue, Jante asserts additional reasons why the trial court erred by not reimbursing the community estate.

We reiterate that the trial court did not make written findings of fact.  Thus, we do not know the specific amounts, and reasons why, the trial court reimbursed the community estate from Eric's separate estate.  In any event, we must infer that the trial court made all findings necessary to support its judgment.  *Holt Atherton, Inc.,* 835 S.W. 2d at 83.    Further, while we cannot consider any oral pronouncements, it is of interest to note the trial court's explanation of his property division:

> I gave credence to some, but not nearly all of the reimbursement claims.  That gives me an overall – and including attorney's fees and debts and everything that is listed, I got an overall community net estate of about 448,000, with 271,227 and change to her and 177,174 to him.  That's about – that's a 60/40 split of that value.  Of course, that doesn't include the 605,000 stipulated back into [the community estate].

As stated above, the trial court did not make written findings of fact and there was nothing in the decree of divorce stating what reimbursement claims the trial court awarded or refused.

## A.    Legal Standards

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit.  *Barras,* 396 S.W.3d at 173.  "[T]he payment by one marital estate of the debt of another creates a *prima facie* right of reimbursement."  *Penick v.*

*Penick*, 783 S.W.2d 194, 196 (Tex. 1988). As noted above, the party claiming reimbursement has the burden of pleading and proving that the expenditures were made and that they are reimbursable. *Barras*, 396 S.W.3d at 173–74. Reimbursement claims are governed by the Texas Family Code. *See* Tex. Fam. Code § 3.402 (West Supp. 2012); *Id.* Tex. Fam. Code § 3.402(a) (identifying nine categories of expenditures that are included within the meaning of "a claim for reimbursement").

In disposing of a claim for reimbursement, the trial court shall determine the rights of the parties and apply equitable principles to determine whether to recognize the claim after considering the parties' relative circumstances and, in appropriate circumstances, order a division of the claim in a just and right manner. *Id*. § 7.007 ; *see also Id.* § 3.402(b). A trial court's discretion in evaluating a claim for reimbursement is equally as broad as that discretion exercised in making a just and right division of the community estate. *Penick,* 783 S.W.2d at 198 ("In the final analysis, great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement.").

Waste occurs when one spouse, dishonestly or purposefully with the intent to deceive, deprives the community estate of assets to the detriment of the other spouse. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). Waste is one of the non-exclusive factors that a district court may consider in its "just and right" division of community property. *Id.* at 588.

Fraud on the community is a judicially created concept based on the theory of constructive fraud and applied where there is a breach of a legal or equitable duty violating the fiduciary relationship existing between spouses. *Knight v. Knight*, 301 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no

16

pet.). A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse. *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789. Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud in that such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage. *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789. A presumption of constructive fraud arises where one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789. In that circumstance, the burden of proof to show fairness in disposing of community assets is upon the disposing spouse. *Knight*, 301 S.W.3d at 731; *Zieba*, 928 S.W.2d at 789. The court may consider fraud on the community in the division of the estate and may justify an unequal division of the property. *Schlueter*, 975 S.W.2d at 588.

## B. Analysis

In her seventh issue, Jante contends the trial court should have reimbursed community estate for $90,000 Eric borrowed from Ed Anakar after Eric filed for divorce and temporary orders were in effect. She also contends that Eric committed a fraud in connection with his sale of stock in "Spine Pain Management."

Jante did not ask the trial court for a ruling on these items[5] and she did not raise any complaint relative to them in her motion for new trial; therefore, we cannot determine how the trial court considered these particular matters. Thus,

---

[5] Jante proposed that the trial court award this investment to Eric and never requested that the community estate be reimbursed the loss she claims Eric sustained when he sold the stock in "Spine Pain Management."

17

Jante has waived any complaint about the trial court's failure to reimburse this difference. *See Knight*, 301 S.W.3d at 730. We overrule Jante's seventh issue.

In her eighth issue, Jante first complains the trial court abused its discretion by failing to reimburse the community estate for other separate debt payments for which Jante claims Eric used community funds, including payment of a promissory note to his ex-wife, payment of a debt to Rick's Cabaret and to Robert Axelrod, payment of debts on two mobile homes, and payment of three other loans.

With respect to Eric's payments of his separate debt to Rick's Cabaret in the amount of $59,875 and a debt of $38,500 to Robert Axelrod, the trial court ordered that Eric be responsible for all margin loans contained within his separate account. Therefore, because Jante is not responsible for the payment of these loans, reimbursement of the estate is not required. The same is true for Jante's claim as to his separate debt on two mobile homes. One is related to "Origen Finance" (which is misnamed and is actually a debt on a "Greentree" mobile home in the amount of $41,910.36); the other is related to an "Origen Finance" debt of $14,920. The evidence supports a finding that these payments were made by using funds in Eric's margin loan account, which is his separate property. Again, because the trial court determined Eric was responsible for all margin debt, reimbursement was not necessary because Jante was not awarded any portion of the margin debt account.

Jante also complained of a $6,000 loan she did not know Eric made to Travis Reese; however, during trial, Jante testified initially that Reese had not repaid the loan, and then she testified she did not know whether it had been repaid. Based on this conflicting evidence, the trial court could have reasonably decided not to reimburse this amount. Jante further complains of $8,254 for car payments Eric made for Patrick Langan; however, she presented no evidence to support her

contention that Eric made payments on Patrick's behalf. Additionally, while Jante testified that she requested reimbursement for these payments, she admitted the car was in Eric's name. Finally, Jante did not testify that Patrick had possession of, or otherwise used or controlled, the car. Jante also contended there was a $14,029 pre-marital loan to "Banco Popular" which Eric repaid with community funds. While she presented some of the checks used to make these payments with community funds, Jante testified she did not know exactly what this loan was, except that she "believed" it "was a car loan of some type." Therefore, there is no showing the trial court abused its discretion if it rejected these claims. Further, we note that the trial court did not make findings of what reimbursements claims he was awarding and which he was rejecting, nor did Jante ask that the court do so.

Lastly, Jante asserts that Eric used $100,400 of community funds to pay a promissory note owed to his ex-wife, Jennifer, as part of their divorce settlement. There was evidence that Eric was purchasing from Jennifer her 1% interest in E.S. Langan LLP, his separate property—hence, the promissory note is Eric's separate debt. The record reflects payments were made to Jennifer using community funds. Because Jante failed to request findings, however, there is nothing in the record to indicate how the trial court decided this claim for reimbursement. What is clear is that the trial court ordered a division of the community estate with 60% awarded to Jante and 40% awarded to Eric. Therefore, it is possible that the trial court took into account this reimbursement claim when ordering the unequal division. In short, Jante has not shown any abuse of discretion in the manner in which the trial court reached its decision to divide the community estate. *See Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We overrule Jante's eighth issue on her claims for reimbursement. *See Knight*, 301 S.W.3d at 730.

## VI. ERIC'S CRIMINAL CONVICTION

In her ninth issue, Jante contends the trial court erred because it entered judgment prior to the resolution of Eric's pending criminal charges for assault of a family member and interference with an emergency call.

The trial court signed the final divorce decree on September 13, 2012. In her motion for new trial, Jante presented evidence that Eric pleaded guilty on September 24, 2012 to the lesser included offense of attempted interference with an emergency call, arguing this was newly discovered evidence entitling her to a new trial. At the hearing on her motion, the trial court remarked that it did not remember family violence being a significant issue during trial and did not think a post-judgment conviction qualified as newly discovered evidence. The court also mentioned it had begun moving "family violence criminal cases to a special docket so that they are on kind of a fast-track to get things done and they aren't prolonged."

According to Jante, Eric's guilty plea necessarily encompassed family violence because he purportedly admitted to attempting to interfere with her emergency call during an episode of family violence. Jante argues this evidence entitled her to spousal maintenance. *See* Tex. Fam. Code Ann. § 8.051(1) (West 2013) (providing trial court may make award of spousal maintenance if, among other elements, "the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence, as defined by Section 71.004, committed during the marriage against the other spouse . . . ."). Jante also argues the trial court should have implemented the "fast-track" docket it mentioned during the motion for new trial hearing; however, she cites no authority supporting the proposition that the trial

20

court should have *sua sponte* ensured Eric's criminal charges were resolved before conducting the divorce trial.

Without considering whether attempted interference with an emergency call is a criminal offense constituting an act of family violence for purposes of section 8.051, we hold Jante failed to preserve this issue because she knew of the pending criminal charges and she did not seek a continuance of the divorce trial until after resolution of Eric's criminal charges. *See* Tex. R. App. P. 33.1(a) (requiring complaining party to have preserved its complaint by bringing it to the trial court's attention with sufficient specificity); *Wright v. Wright*, 280 S.W.3d 901, 908 (Tex. App.—Eastland 2009, no pet.) (holding appellant failed to preserve issue regarding trial court's allegedly inadequate pre-trial discovery period because appellant never requested a continuance of trial); *Reyna v. Reyna*, 738 S.W.2d 772, 775 (Tex. App.—Austin 1987, no writ) ("Generally, a motion for continuance must be filed before an unconditional announcement of 'ready' since such an announcement waives the right to seek subsequently a delay based upon any facts which are, or with proper diligence should have been, known at the time.")

Additionally, Eric's conviction was not newly discovered evidence. Rather, it was an event that occurred after trial and for which Jante was required to seek a continuance if she wanted the event to occur before trial. A post-judgment event cannot form the basis for a new trial. *See Azad v. MRCO, Inc.*, No. 14-12-00165-CV, 2013 WL 6700285, at *8 n.3 (Tex. App.—Houston [14th Dist.] Nov. 7. 2013, pet. denied) (mem. op.) (explaining evidence not in existence prior to judgment cannot form the basis of a new trial.) We overrule Jante's ninth issue.

## VII. ERIC'S SALARY

Finally, in her tenth and eleventh issues, Jante contends the trial court's property division, award of child support, and failure to order Eric to pay for Jante

attorney's fees was not based on all necessary facts; specifically, the trial court did not know about Eric's post-trial salary raise. Jante contends Eric's employment contract, under which he had been receiving a salary of $600,000-per-year, was expired at the time of trial, and he nevertheless withheld the fact that he would be negotiating a new contract:

[Eric's Counsel:] What were you doing at the time that y'all married?

[Eric:] I was the president and CEO of Rick's Cabaret.

[Eric's Counsel:] About what were you making then, Eric?

[Eric:] 150,000 a year.

[Eric's Counsel:] And what are you making now?

[Eric:] 600,000 a year.

Jante asserts Eric misled the court with this testimony because he could not have reasonably assumed his salary would remain $600,000. Jante testified at the hearing on her motion for new trial that Eric's $600,000-per-year contract expired in April 2012. She presented documents showing Eric entered into a new contract on July 23, 2012, under which he would receive $750,000 for 2012, $825,000 for 2013, and $825,000 for 2014. Eric also received additional shares of Rick's Cabaret's stock as compensation in late June and early July 2012. Jante alleges Eric's salary increase and additional stock options are community property because they were based on his performance for Rick's Cabaret which occurred during the marriage. Jante had the opportunity to cross-examine Eric regarding his upcoming salary renegotiation[6] and move for a continuance until after Eric's new contract

---

[6] In support of these issues, Jante cites *Evans v. Evans*, holding the trial court abused its discretion by mischaracterizing the divorcing parties' house as the husband's separate property—a mischaracterization requiring a new trial regarding division of the community estate and determination of child support. 14 S.W.3d 343, 346–48 (Tex. App.—Houston [14th Dist.] 2000, no pet.). First, we disagree that Eric mischaracterized his salary. Second, *Evans* is further distinguishable because the divorcing parties' house was community property at the time of trial, whereas Eric's salary increase occurred after trial.

was executed so that it could be considered prior to the entry of a judgment, but she did not do so.

We agree with Eric that, although his new salary and compensation may be relevant in a motion to modify child support, it does not entitle Jante to a new trial. Nothing indicates Jante was unaware that Eric's employment contract had expired and would be renewed. Accordingly, we overrule Jante's tenth and eleventh issues.

We affirm the trial court's judgment granting the decree of divorce and property division set forth therein.


/s/     John Donovan
        Justice

Panel consists of Justices McCally, Busby, and Donovan.

23